Sheldon PORTMAN, Plaintiff–Appellant,

v.

COUNTY OF SANTA CLARA; Bob
Diridon, et al., Defendants–
Appellees.

No. 91–16743.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided June 9, 1993.

900

James McManis, McManis, Faulkner & Morgan, San Jose, CA, for plaintiff-appellant.

Allen Ruby, Morgan, Ruby, Schofield, Franich & Fredkin, San Jose, CA, for defendants-appellees.

Judith M. Schelly, Morrison & Foerster, San Francisco, CA, for National Legal Aid and Defender Ass'n, amicus curiae.

Margaret C. Crosby, ACLU, San Francisco, CA, for American Civil Liberties Union Foundation of Northern California, amicus curiae.

Ephraim Margolin, San Francisco, CA, for California Attorneys for Criminal Justice, amicus curiae.

Margaret Scully, Santa Monica, CA, for California Public Defenders' Ass'n, amicus curiae.

Before: CHOY, NOONAN, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We consider, among other things, whether a public defender has standing to challenge the constitutionality of a state statutory scheme that makes him an at-will employee on the ground that the scheme interferes with the Sixth Amendment rights of his clients.

I

Portman was employed as the Chief Public Defender of Santa Clara County from 1968 to 1986. Until the last year of his employment, he had received consistently high performance ratings.

In 1985, the County asked Portman to provide "objective and measurable criteria by which his performance may be judged." This request, combined with previous requests by the Board to keep costs down, to avoid declaring conflicts due to an excessive workload, and to maintain "early, quick settlements of cases," led Portman to fear that the Board might be planning to grade him on the basis of guilty pleas and number of settlements without trial.

At that time, Portman had been communicating with the Board about the excessive caseload in the public defender's office and had been requesting additional personnel. He stated at a public budget session that the lawyers in the public defender's office faced malpractice and professional disciplinary action for taking too many cases, and he stated that he would have to ask the courts directly for additional personnel if the Board did not grant his requests.

According to Portman, he was reprimanded by the Board for his speech at the budget meeting. Two months later, he was informed that the Board had voted to give him a salary increase of only 1.5 percent, while the district attorney had received an increase of 7.5 percent. Prior to this, the district attorney's and the public defender's raises had been the same. A few months later, Portman filed this suit, seeking declaratory relief, and damages under 42 U.S.C. § 1983.

After filing suit, the relations between Portman and the Board became increasingly strained. The Board continued to deny Portman's request for additional staff, and Portman authorized his staff to request court orders for the needed help. In 1986, the District Attorney was given an increase of 11.3 percent, while Portman was only given an increase of 5 percent.

Portman was terminated on November 7, 1986. He was sent a letter of termination which was critical of his performance. Although he was invited to a meeting to discuss the matter, he declined to attend, requesting instead a public hearing or a meeting in which a court reporter was present. After he was fired, Portman requested and was denied his unused sick leave and medical coverage because he had not been terminated in "good standing."

Portman's third amended complaint stated six causes of action: section 1983 claims based upon the First Amendment, substantive due process and procedural due process; a claim for the denial of access to the courts under 42 U.S.C. § 1985(2); a state law claim for wrongful discharge; and claim for declaratory relief, alleging that the statutory scheme that provides that the Public Defender of Santa Clara County is an at-will employee is unconstitutional under the Sixth Amendment. The complaint named the County and several members of the Board of Supervisors as defendants.

The district court granted summary judgment in favor of the County on the substantive and procedural due process claims, the access to the courts claim, and the declaratory judgment claim and entered final judgment on those claims pursuant to Federal Rule of Civil Procedure 54(b). The district court concluded that Portman lacked standing to challenge the at-will statute on Sixth Amendment ground. The court further concluded that Portman lacked a property interest in his job and thus could not make out the due process claim, and finally concluded that 42 U.S.C. § 1985(2) does not provide a remedy in the circumstances at issue here. The First Amendment and wrongful discharge claims are still pending before the district court.

## II

California Government Code § 27702 provides that if the public defender of a county is to be appointed, he or she is to be appointed by the Board of Supervisors and is to serve at the will of the Board. Santa Clara County Charter § 301 provides that the Public Defender of Santa Clara County is appointed by the Board of Supervisors. Thus, in Santa Clara County, the public defender serves at the will of the Board. Portman argues that the statutory scheme is unconstitutional because it gives the Board of Supervisors the power to direct the manner in which the public defender discharges his or her duties, which in turn interferes with the public defender's ability to provide his or her clients with the effective assistance of counsel. This, he claims, violates the Sixth Amendment. The district court found that Portman lacked standing to assert this claim.[1]

### A

Portman maintains that he has direct standing to assert the Sixth Amendment claim because he has been injured by the application of the statute. However, it is well-settled that a litigant may invoke only his or her "own legal rights or interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties," *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), except in the narrowly defined circumstances discussed in Part B, *supra.* Thus, in order to have direct standing to claim that the statute violates the Sixth Amendment, Portman must show that the Sixth Amendment confers rights upon him directly. No court, however, has ever held that the Sixth Amendment protects the rights of anyone other than criminal defendants. *See Kinoy v. Mitchell,* 851 F.2d 591, 594 (2d Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *cf. Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975) (right to effective as-

sistance of counsel is held by the individual defendant); *United States v. Partin,* 601 F.2d 1000, 1006 (9th Cir.1979), *cert. denied,* 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980). Portman does not have direct standing to challenge the constitutionality of the statutory scheme on Sixth Amendment ground.

### B

Portman argues that even if the statutory scheme does not violate his own constitutional rights, it violates the rights of his clients. Although the general rule is that a litigant may assert only his or her own rights, the court has recognized an exception to the prohibition against third party standing where certain criteria are met. Portman argues that he meets the criteria and thus has third party standing to assert the Sixth Amendment rights of his clients.

Before we consider whether Portman has the legal authority to assert the Sixth Amendment rights of his clients, however, we must decide whether his clients' claims under the Sixth Amendment are ripe for review. If we conclude that their claims are not ripe, we need not consider whether Portman has third party standing to assert their rights.

"[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." Chemerinsky, *Federal Jurisdiction* 99 (1989) (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). The "basic rationale" of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515. The ripeness inquiry contains both a constitutional and a prudential component. The constitu-

---

1. Portman also claims that the statutory scheme violates his substantive due process right to be free from interference in the practice of his profession. While he has standing to assert this claim, this claim fails on the merits. There is no right under the substantive due process clause to be terminable only for cause.

tional component focuses on whether there is sufficient injury, and thus is closely tied to the standing requirement, *see* Nichol, *Ripeness and the Constitution*, 54 U.Chi.L.Rev. 153 (1987); the prudential component, on the other hand, focuses on whether there is an adequate record upon which to base effective review. *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515. "Because of the 'great gravity and delicacy of [the courts'] function in passing upon the validity of [a legislative enactment]' the need is manifest for a 'full-bodied record' in such adjudication." *Martin Tractor Co. v. Federal Election Comm'n*, 627 F.2d 375, 380 (D.C.Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980).

■ Here, Portman argues that the at-will statute interferes with his clients' rights to the effective assistance of counsel. However, Portman fails to point to even a single client who has received substandard representation as a result of this statute or whose future representation is threatened in any way. In fact, Portman fails to establish that he was personally representing any clients at the time he was fired, or that if he had not been fired, he would be representing clients.[2] Instead, his entire argument about the effect of the at-will statute rests upon hypothetical situations and hypothetical clients.

Because his claim that the statutory scheme violates his clients' Sixth Amendment rights is not grounded in concrete factual situations, it would be almost impossible to determine whether the statutory scheme would at some point infringe upon the constitutional rights of some client. Determining whether the statute is unconstitutional would require us to speculate about possible behavior by the Board of Supervisors, possible reactions by the public defender, and the possible effects the reactions would have on various defendants in many different types of criminal trials. We would then have to decide in the abstract whether those effects could be considered the "ineffective assistance of counsel," recognizing that budget

constraints affect almost every criminal defendant. Finally, we would have to decide whether the scenarios created are probable enough to warrant striking down the entire statute, or whether a more limited remedy would be appropriate. That sort of speculation and conjecture is precisely what the prudential component of the ripeness doctrine is meant to prevent. Portman's alleged clients' Sixth Amendment claims are not ripe.

Because Portman's argument focuses on the unconstitutional effects the neutral statute is likely to have, his case is fundamentally different from other third party standing cases where ripeness was not an issue. For example, in *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the Court allowed vendors to assert the equal protection rights of their male customers in challenging a statute that allowed the vendors to sell low alcohol beer to women between the ages of eighteen and twenty-one, but prohibited them from selling beer to men under the age of twenty-one. In that case, like this one, it appears that the vendors did not identify specific clients who had been affected by the law, or who were likely to be affected in the future. However, in that case, the possible constitutional infirmity was clear on the face of the statute: a court could determine whether the statute deprived male customers of equal protection even though a detailed factual record had not been developed. Thus, the prudential concerns of the ripeness doctrine were not implicated.

Even if we were to construe Portman's request to have the entire statute declared unconstitutional as a narrow "as applied" challenge focusing on the specific actions of the Board in this particular instance, we would still have to speculate about how the County's actions would affect the quality of legal representation. Although less so, the claim would still be too abstract for effective review. *Cf. Wounded Knee Legal Defense/Offense Comm. v. FBI*, 507 F.2d 1281 (8th Cir.1974) (a committee that provided legal assistance to indigent Indians in crimi-

---

**2.** The County argues that Portman served merely in an administrative capacity and thus had no clients. However, the County provides no citation to the record for this proposition. On the other hand, there is nothing in the record to indicate that Portman was representing clients at the time he was fired.

nal trials had standing to challenge intimidating and harassing activities by the FBI that allegedly interfered with the committee's ability to provide their clients with the effective assistance of counsel).

■ In short, we conclude that the Sixth Amendment claims of Portman's alleged clients are not ripe, and therefore Portman cannot assert them. In reaching this conclusion, we do not mean to imply that pressure by the Board could never give rise to a violation of an indigent defendant's Sixth Amendment right to counsel. As the Supreme Court stated in *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981):

> This Court's decision in *Gideon v. Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963), established the right of state criminal defendants to the " 'guiding hand of counsel at every step in the proceedings against [them].' " Implicit in the concept of a "guiding hand" is the assumption that counsel will be free of state control. There can be no fair trial unless the accused receives the services of an effective and independent advocate.

*Id.* 454 U.S. at 322, 102 S.Ct. at 451 (citations omitted). Further, we must emphasize that we express no view as to whether a public defender would have standing to assert the rights of his clients if the clients' claims were ripe. Because the Sixth Amendment claims in this case are not ripe, however, we affirm the district court's dismissal of the declaratory judgment claim.

### III

■ The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process. A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process. The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law.

Portman argues that the County of Santa Clara deprived him of his property interests in his job and certain benefits, and his liberty interest in his reputation.

### A

We must first decide whether Portman had a property interest in his job or his benefits, and if so whether it is the type of property interest the Due Process Clause protects.

#### 1

■ A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). Laws, rules or understandings derived from independent sources such as state law create such claims of entitlement. *Id.* However, a mere expectation that employment will continue does not create a property interest. *Id.* If under state law, employment is at-will, then the claimant has no property interest in the job. *Id.*

California Government Code § 27702 provides that if the public defender of any county is to be appointed, he or she is to be appointed by the Board of Supervisors to serve at its will. Santa Clara Charter § 301 provides that the public defender is to be appointed by the Board of Supervisors. Thus, in Santa Clara County, the public defender serves at the will of the Board of Supervisors.

Portman argues that, notwithstanding the above statutory scheme, he was not an at-will employee. He essentially makes two arguments in support of this conclusion. First, he argues that California Government Code § 27702 is unconstitutional as it applies to public defenders, and thus must be disregarded in determining whether he has a property interest in his job. As discussed in Part II, *supra*, Portman does not claim that the statute unconstitutionally infringes upon his own rights; rather, his only viable theory is that it violates the Sixth Amendment rights of his clients. However, as the Sixth

Amendment claim is not ripe, Portman cannot assert this ground.

■ Second, Portman argues that even if the statutory scheme is constitutional, the scheme does not preclude an implied-in-fact contract, providing that he would be terminable only for cause, from arising. He analogizes to employment law in the private sector in California, where the statutory presumption that employment is at-will can be overcome by showing that an implied contract had arisen over the course of employment. Portman's argument is without merit. Under California law, the terms of *public* employment are governed entirely by statute, not by contract, and hence "as a matter of law, there can be no express or implied-in-fact contract between plaintiff and [the County] which restricts the manner or reasons for termination of his employment." *Summers v. City of Cathedral City*, 225 Cal.App.3d 1047, 275 Cal.Rptr. 594, 605 (1990). Because by statute the public defender of Santa Clara County is an at-will employee, Portman had no property interest in his job. An action under the Due Process Clause cannot lie for his termination.

### 2

■ Portman also claims that he had a constitutionally protected property right in employment benefits, specifically in accrued and unused sick leave and in a medical insurance plan.

Portman has presented a genuine issue of material fact that he was entitled to the benefits. His undisputed declaration presented at summary judgment stated that he had been promised that "upon termination in good standing," he would be entitled to receive the monetary value of fifty percent of unused sick pay and would continue to receive medical insurance at the rate provided to countywide employees for his lifetime. Moreover, he is entitled to these benefits under Santa Clara County ordinances. Santa Clara County Ordinance No. NS–20.86 provides:

> Except as otherwise provided by this ordinance, persons in management positions shall receive the same benefits as available countywide to all other county employees.

Santa Clara County Ordinance No. NS–20.86 § 3.B.4 provides:

> Upon termination in good standing and ten or more years of county employment, accrued and unused sick leave shall be paid at the rate of 2% for each full year of service, not to exceed 50%, multiplied by the monetary value of such sick leave.

In his declaration presented at summary judgment, Portman stated that he had accrued 1715 hours of unused sick leave. Since Portman has been employed by the County for over ten years, he fits within the statute.

The County refused to provide him with these benefits, however, arguing that he had not been discharged in good standing. Portman, however, raises a genuine issue of material fact as to whether he was discharged in "good standing" as contemplated by the statute and by his contract with the County. He presented evidence that he had been a valued employee throughout his years of service and that he had done nothing to warrant termination for cause. In fact, the key to the County's argument seems to be that the County did not *need* good cause to fire him. It is impossible to say as a matter of law that his current dispute with the Board was enough to constitute the lack of "good standing" sufficient to strip him of his benefits.

■ Deprivation of a benefit to which one is entitled under a statute or a contract does not automatically give rise to a property interest protected by the Due Process Clause. "It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim." *Physicians Serv. Med. Group v. San Bernardino County*, 825 F.2d 1404, 1408 (9th Cir.1987). "[T]he Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts." *Id.* (quoting *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir.1983)). Thus, although the determination of what is property is made by reference to state law, a court must look to federal constitutional law to determine whether the interest is of the kind protected by the Fourteenth Amendment.

The Ninth Circuit has never considered the precise question of whether accrued sick leave or medical insurance benefits are the type of property protected by the Fourteenth Amendment. Other circuits, however, have considered analogous questions. The Sixth Circuit in *Ramsey v. Board of Education*, 844 F.2d 1268, 1272 (6th Cir.1988), for example, held that "an interference with a property interest in a pure benefit of employment [there, accumulated sick leave], as opposed to an interest in the tenured nature of employment itself, is an interest that can be and should be redressed by a state breach of contract action and not a federal action under section 1983." The court reasoned that the Due Process Clause protects a property interest in continuing employment because "the tenured employee who loses his or her position by a premature breach of contract has suffered the loss of a property interest that, because of its special nature, is neither easily defined nor easily compensated by a typical breach of contract action." *Id.* In contrast, "an employee deprived of a property interest in a specific benefit, term or condition of employment, suffers a loss which is defined easily." *Id.* Thus, the court concluded, entitlement to accumulated sick leave, although a property interest, is not constitutionally protected. *See also Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir.1987) (a claimed entitlement to an increase in pension benefits under a collective bargaining agreement amounts to a contract dispute that is not redressable under federal law); *Boston Envtl. Sanitation Inspectors Ass'n v. Boston*, 794 F.2d 12, 13 (1st Cir. 1986) (per curiam) (a claim that Boston breached labor contracts and violated statutory provisions that provided for employment benefits could not form the basis of a § 1983 action; "mere violation of state statutory requirements does not offend federal constitutional due process"); *Brown v. Brienen*, 722 F.2d 360, 366 (7th Cir.1983) (since the loss of accrued time off was readily compensable in monetary terms, "it may ... be doubted whether any deprivation in the constitutional sense has ... occurred, or will occur unless and until the state courts turn down a meritorious contract claim").

On the other hand, the Ninth Circuit and other courts have held that the deprivation of *pension* or *disability* benefits amounts to the deprivation of constitutionally protected property. *See Raditch v. United States*, 929 F.2d 478, 480 (9th Cir.1991) (federal disability payments); *Knudson v. Ellensburg*, 832 F.2d 1142, 1144–45 (9th Cir.1987) (municipal disability payments); *Ostlund v. Bobb*, 825 F.2d 1371, 1373 (9th Cir.1987) ("Unquestionably, the claimant had a property interest in his disability retirement benefits."), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988); *see also Russell v. Dunston*, 896 F.2d 664, 668 (2d Cir.) (disability benefits), *cert. denied*, 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990); *Winston v. City of New York*, 759 F.2d 242, 247–49 (2d Cir.1985) (retirement benefits). To reach that conclusion, those cases simply applied language from *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), that provides that a property interest is created if the employee has a "legitimate claim of entitlement" to a benefit. Literal application of the language of *Roth* to the benefits at issue here would lead to the conclusion that they are constitutionally protected as well. However, the results in those cases can perhaps be explained in part by the special nature of pension and disability benefits. Indeed, the Second Circuit drew a distinction between the entitlement to all disability benefits and the entitlement to an *increase* in disability benefits. *Compare Basciano v. Herkimer*, 605 F.2d 605, 609 (2d Cir.1978) (deprivation of *all* disability benefits without due process violates the due process clause), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979), *with Costello*, 811 F.2d at 784 (entitlement to *increase* in disability benefits is not an interest protected by the due process clause).

In short, whether entitlement to the benefits at issue here is a constitutionally protected property interest is an open question under Ninth Circuit law. We decline to resolve it here, however, because entitlement to the benefits is at issue in other claims currently pending before the district court. Since a federal court must address that issue and since it may turn out that Portman has no entitlement to these benefits, deciding the

constitutional question whether these benefits are protected under the Due Process Clause may be unnecessary. Prudence dictates that we decline to decide unsettled questions of constitutional law until it is clear that it is necessary to do so.[3]

We reverse the grant of summary judgment on this issue and remand to the district court.

**3**

▪ Portman argues that he was entitled to the same salary increase as the district attorney, and argues that when he received a lesser increase, he was deprived of constitutionally protected property. Portman, however, has failed to raise a genuine issue of material fact as to whether he was entitled to the same increase as the district attorney. Section 709 of the Santa Clara Charter provides that the salaries set by the Board must be "commensurate with those prevailing throughout the County for comparable work." It may be that the work of the public defender and the district attorney are comparable, but we are not in a position to take judicial notice of their comparability. Portman presents no evidence to show that he and the district attorney were performing commensurate work. Thus, his claim that he has a property right to the same salary increase as the district attorney must fail.

**B**

Portman argues that the termination letter from the Board impugned his good name and interfered with his ability to practice his profession. He argues that the Board's actions amounted to the deprivation of liberty without due process.

▪ The liberty interest protected by the due process clause "encompasses an individual's freedom to work and earn a living." *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). "[W]hen the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name." *Id.* "To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities." *Id.* at 1101. Moreover, to infringe upon a constitutionally protected liberty interest, the charges must be published. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

▪ "Charges that carry the stigma of moral turpitude" such as dishonesty or immorality "may implicate a liberty interest, but charges of incompetence or inability to get along with others do not." *Wheaton v. Webb–Petett*, 931 F.2d 613, 617 (9th Cir. 1991). Here, the accusations in the termination letter do not amount to charges of moral turpitude. Portman summarizes the portions of the letter that he perceived to be most damaging as follows:

[The letter from the Board of Supervisors] accuses Mr. Portman of:

(1) Lacking an "understanding of the numerous functions of the Public Defender" in having failed to satisfy their demands for "useful and objective criteria with which to evaluate the office of Public Defender ...", and

(2) Being ignorant or heedless of "severe fiscal constraints under which County Government must operate" and failing to "communicat[e] to the Board the possible necessity of budget augmentations for [his] department as soon as [he was] aware of critical needs ...," and

(3) "[D]emand[ing] ... additional support from the general fund," without "discuss[ing] innovative solutions to ... budgetary difficulties ...," and

(4) A "staggering failure ... to recognize the obligations of County Management to

---

3. Since it is not clear whether the entitlement to these types of benefits is a constitutionally protected property right, the individual defendants who were involved in the decision not to give them to Portman are immune from suit under § 1983. *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, we affirm the district court's grant of qualified immunity to the individual defendants on this claim.

the Board" in responding to an inquiry by a court appointed jail compliance officer in pending litigation against the county by jail inmates, and

(5) A "fail[ure] to recognize ... a basic fundamental obligation to initiate communication with [his] appointing authority and to initiate positive, problem-solving interaction when conditions in [his] department so warrant," and

(6) Displaying "passivity in following [Board] directives regarding management goals, defensiveness in responding to [Board] inquiries, and disinterest in involving [the Board] in creative solutions to the needs and problems of your office."

Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment at 26 (quoting the termination letter). These charges are strikingly similar in tone and substance to those in the termination letter at issue in *Roley v. Pierce County Fire Protection District No. 4*, 869 F.2d 491, 495 (9th Cir.1989). The court in that case concluded, "[t]hese charges ... focus on [the appellant's] lack of competence and ... inability to get along with and manage others. They do not infringe a liberty interest." *Id.* Because the above charges also focus on Portman's alleged lack of competence, and not on dishonesty or moral turpitude, we conclude that the charges in this case did not infringe upon Portman's liberty interest. The mere fact that the charges may be unfair or untrue does not give rise to a constitutional claim: "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. at 350, 96 S.Ct. at 2079. Of course, the absence of a constitutional claim in no way affects the ability of one damaged by false accusations from suing under state law defamation.

"Allegations that exclude a person permanently from a profession" may also infringe a constitutionally protected liberty interest, even if they do not rise to the level of moral turpitude. *Roley*, 869 F.2d at 496. The

charges here have not excluded Portman from the practice of law; in fact, he was subsequently employed as a lawyer in Santa Clara County. *See Bollow*, 650 F.2d at 1101 (although the appellant may not be able to practice banking law, he retained his license to practice law and was thus not permanently excluded from his chosen profession); *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir.1976) (scope of employment defined as physician not pathologist).

In short, we conclude that the County has not violated Portman's constitutionally protected liberty interest without due process of law and thus affirm the district court on this issue.

## IV

Portman claims that the County deprived him of his substantive due process rights to continued employment when it discharged him for an allegedly arbitrary reason. The Ninth Circuit has not considered whether a discharged public employee can maintain a substantive due process claim based upon arbitrary and capricious discharge from employment. *Cf. Lum v. Jensen*, 876 F.2d 1385, 1387–90 (9th Cir.1989) (explaining that the law is unsettled), *cert. denied*, 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990). However, every circuit that does recognize such a right requires the employee to show that he has a property right in his or her job before he or she can claim a violation of substantive due process. *See id.* (collecting cases). Because, as explained in Part III.A.1, *supra*, Portman has no property right in his job, his substantive due process claim must fail. We affirm the district court on this claim.

## V

Portman claims that the County denied him access to both state and federal courts in a manner that gives rise to a cause of action under 42 U.S.C. § 1985(2).[4]

Section 1985(2) contains two clauses that give rise to separate causes of action. The

---

4. Portman also argues that the Board violated his First Amendment rights in retaliating against him for seeking judicial relief. Portman's

§ 1983 claim based upon the First Amendment is still pending before the district court.

first clause concerns access to *federal* courts, giving rise to a cause of action where

> two or more persons in any State or Territory conspire [A] to deter, by force, intimidation, or threat, any party or witness *in any court of the United States* from attending such court, or from testifying to any matter pending therein, freely, fully and truthfully, or [B] *to injure such party or witness in his person or property on account of his having so attended or testified....*

42 U.S.C. § 1985(2) (emphasis added).

The second clause concerns access to *state or territorial* courts, giving rise to a cause of action where

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice *in any State or Territory,* with intent to deny to any citizen *the equal protection of the laws....*

*Id.* (emphasis added).

Portman's complaint alleges that the County denied him access to both state and federal courts. As to the denial of access to state courts, the complaint alleges that the defendants

> acted and conspired to restrict, restrain, deter, and inhibit plaintiff from seeking judicial relief for an excessive caseload and to punish him for seeking necessary court-ordered resources to discharge his professional and constitutional duties to his clients.

As to the denial of access to federal courts, the complaint alleges that the defendants

> acted and conspired to retaliate against plaintiff for seeking legal redress for violations of his civil rights in the courts of the United States.

The retaliation allegedly took many forms, culminating in his termination. Because the legal standards for the denial to state and federal courts are different, each claim must be analyzed separately.

■ It is well-settled that the " 'equal protection' language of the second clause of section 1985(2) [requires] an allegation of class-based animus for the statement of a claim under that clause." *Bretz v. Kelman,*

773 F.2d 1026, 1029 (9th Cir.1985); *accord Griffin v. Brekenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Here, Portman has not alleged that the County denied him access to state courts because he was a member of a protected class. Thus, Portman has no cause of action for denial of access to *state* court.

■ There is no such requirement in an action alleging the denial of access to *federal* court under the first clause of section 1985(2). *Kush v. Rutledge,* 460 U.S. 719, 726, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). Instead, to make out a claim based on retaliation under the first clause of section 1985(2), a plaintiff must prove four elements: (1) a conspiracy by the defendants; (2) to injure a party or witness in his or her person or property; (3) because he or she attended federal court or testified in any matter pending in federal court; (4) resulting in injury or damages to the plaintiff. 42 U.S.C. § 1985(2); *cf. Chahal v. Paine Webber Inc.,* 725 F.2d 20, 23 (2d Cir.1984) (setting out elements for witness intimidation under § 1985(2)).

■ The district court dismissed Portman's complaint on the basis of the second and fourth elements, concluding "a cause of action for denial of access to the courts was not meant to provide a remedy for repercussions such as a salary denial or termination." We disagree with this conclusion. Although this court has not addressed the question, other circuits have concluded that plaintiffs who "have proved that they were denied [employment opportunities as a result of a conspiracy] because they previously had instituted legal actions to vindicate their federal rights" have made out claims under section 1985, even where they had no constitutionally protected property interest in the job. *See Irizarry v. Quiros,* 722 F.2d 869, 871 (1st Cir.1983); *see also Wright v. No Skiter Inc.,* 774 F.2d 422 (10th Cir.1985) (plaintiff alleging that the defendants conspired to defeat his low bid for a contract in retaliation for his bringing a federal suit states a claim under § 1985(2)). As the court in *Irizarry* explained, " '[p]roperty' here must include any economic damage that would be recognized

in an ordinary tort suit." *Id.* We see no reason to depart from the approach of those cases, and conclude that the district court erred in dismissing the claim on this basis.

Whether or not Portman has alleged facts sufficient to make out the first and third elements is a closer question. This court has never directly addressed whether individual members of a single government entity can form a "conspiracy" within the meaning of section 1985. *See Padway v. Palches,* 665 F.2d 965, 969 (9th Cir.1982) (expressly reserving the issue). Other circuits, however, are split. Some courts have held that the "intra-corporate conspiracy" doctrine applies in section 1985 cases. The court in *Runs After v. United States,* 766 F.2d 347, 354 (8th Cir.1985), for example, held that a complaint alleging a conspiracy involving members of the Tribal Council failed to state a claim under section 1985 since a governmental body cannot conspire with itself and the individual members of the body, acting in their official capacity, "cannot conspire when they act together ... in taking official action on behalf of the [governing body]." *Accord Gladden v. Barry,* 558 F.Supp. 676, 679 (D.D.C.1983) (city government); *Edmonds v. Dillin,* 485 F.Supp. 722, 729 (N.D.Ohio 1980) (same); *Lieberman v. Gant,* 474 F.Supp. 848, 875 (D.Conn.1979) (state university), *aff'd,* 630 F.2d 60 (2d Cir. 1980); *see also Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972) (Stevens, J.) (holding that when two executives of the same firm make a decision to discriminate in furtherance of the purposes of the business, this decision cannot be called a conspiracy for purposes of § 1985); *Buschi v. Kirven,* 775 F.2d 1240, 1251–52 (4th Cir.1985) (same); *Doherty v. American Motors Corp.,* 728 F.2d 334, 339–40 (6th Cir.1984) (same); *Girard v. 94th Street & Fifth Avenue Corp.,* 530 F.2d 66, 79–72 (2d Cir.) (same), *cert. denied* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976). Other courts have rejected the application of the intra-corporate conspiracy doctrine to section 1985 cases. *See Novotny v. Great American Fed. Savings & Loan Ass'n,* 584 F.2d 1235, 1256–59 (3d Cir.1978) (en banc), *rev'd on other grounds* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (the Supreme Court noted, but did not resolve the circuit split); *Stathos v. Bowden,* 728 F.2d 15, 20–21 (1st Cir.1984); *United States v. Hartley,* 678 F.2d 961, 971–72 (11th Cir. 1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 603 (5th Cir.1981); *Rebel Van Lines v. City of Compton,* 663 F.Supp. 786 (C.D.Cal.1987) (emphatically rejecting the application of the intracorporate conspiracy doctrine to § 1985 cases, especially in the government context). We decline to resolve this conflict today because the parties have not briefed the issue, nor has the district court ruled on it. Although we may affirm the grant of summary judgment on any basis presented in the record, we are not obliged to do so.

Similarly, there is a split in the circuits regarding the proper interpretation of the term "attend[ ] or testif[y]." The Fifth Circuit held that in using those terms "Congress meant section 1985(2) to protect a party based on *his physical presence* while attending or testifying in court." *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 348 (5th Cir.) (en banc) (emphasis added), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981). Thus, according to the *Kimble* court, section 1985(2) does not provide a remedy for retaliation against *the filing* of a lawsuit. *Id.* The Tenth Circuit, in contrast, concluded that "for purposes of section 1985(2), an individual is deemed to have 'attended' a court of the United States from the moment that the person files a complaint." *Wright,* 774 F.2d at 425 (quoting the original panel decision in *Kimble v. D.J. McDuffy, Inc.,* 623 F.2d 1060, 1068 (5th Cir. 1980), *vacated on reh'g en banc,* 648 F.2d 340, 348 (5th Cir.1981)); *see also Irizarry,* 722 F.2d at 871 (First Circuit holding the same by implication). As with the conspiracy element, we have not yet faced this issue; since neither the parties nor the court has addressed it, we decline to do so.

Because the district court erroneously concluded that a cause of action for denial of access to courts could not provide a remedy for a retaliatory termination, we reverse and remand for further proceedings on this issue.

## VI

The district court's grant of summary judgment in favor of the defendants on the denial of access to courts claim and the procedural due process claim based upon the denial of sick leave and insurance benefits are REVERSED and REMANDED. The grant of summary judgment on all other issues is AFFIRMED. Each side will bear its own costs on appeal.