(2008)
GALAXY GAMING OF OREGON, LLC, a New Mexico limited liability company; Galaxy Gaming, LLC, a Nevada limited liability company; Galaxy Gaming, INC., a Nevada Corporation, et al.; Galaxy Gaming of Arizona, LLC, a New Mexico limited liability company; Galaxy Gaming of British Columbia, LLC, a New Mexico limited liability company; Galaxy Gaming of California, LLC, a New Mexico limited liability company; Galaxy Gaming of Connecticut, LLC, a New Mexico limited liability company; Galaxy Gaming of Illinois, LLC, a New Mexico limited liability company; Galaxy Gaming of Indiana, LLC, a New Mexico limited liability company; Galaxy Gaming of Iowa, LLC, a New Mexico limited liability company; Galaxy Gaming of Kansas, LLC, a New Mexico limited liability company; Galaxy Gaming of Manitoba, LLC, a New Mexico limited liability company; Galaxy Gaming of Michigan, LLC, a New Mexico limited liability company; Galaxy Gaming of Mississippi, LLC, a New Mexico limited liability company; Galaxy Gaming of Missouri, LLC, a New Mexico limited liability company; Galaxy Gaming of Nevada, LLC, a Nevada limited liability company; Galaxy Gaming of New Jersey, LLC, a New Mexico limited liability company; Galaxy Gaming of New York, LLC, a New Mexico limited liability company; Galaxy Gaming of North Dakota, LLC, a New Mexico limited liability company; Galaxy Gaming of Nova Scotia, LLC, a New Mexico limited liability company; Galaxy Gaming of Oklahoma, LLC, a New Mexico limited liability company; Galaxy Gaming of Ontario, LLC, a New Mexico limited liability company; Galaxy Gaming of South Dakota, LLC, a New Mexico limited liability company; Galaxy Gaming of Washington, LLC, a New Mexico limited liability company; Galaxy Gaming of Wisconsin, LLC, a New Mexico limited liability company; Rockland Ridge Corporation, a Nevada corporation; Alameda Enterprises, LLC, a New Mexico limited liability company; Primetime Player Management, LLC, a Florida limited liability company; *1181 Robert B. Saucier; The Alixandra Saucier Regulatory Trust, a Nevada spendthrift trust; Jeffery J. Whitehead, as Trustee of the Alixandra Saucier Regulatory Trust; and Alixandra J. Saucier, Plaintiffs,
v.
Charles BURDICK, Alfred C. Bathke, and Does I-C, Defendants.
Civil No. 07-1275-AA.
United States District Court, D. Oregon.
March 13, 2008.

OPINION AND ORDER
AIKEN, District Judge:
Pending before the court are Alfred C. Bathke ("Bathke") and Charles Burdick's ("Burdick") ("defendants") motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). On March 4, 2007 the court held telephone oral argument on these motions. Defendants' motions are granted in part and denied in part.
In this action, plaintiffs Galaxy Gaming of Oregon ("GGO"), a New Mexico limited liability company, and thirty-one other plaintiffs filed several claims under federal and state law against defendants Bathke and Burdick, former employees of the Oregon State Police ("OSP"), a number of other unidentified residents of the State of Oregon, attorneys or other agents and officers of the Attorney General of the State of Oregon, and persons or entities of unknown residency.
Plaintiffs' claims are as follows: (1) deprivation of plaintiffs' right to honest government services in violation of 42 U.S.C. § 1983; (2) due process violation, 42 U.S.C. § 1983; (3) deprivation of plaintiffs' rights by creating a class which was treated differently than others similarly situated; (4) equal protection of law; (5) interference with prospective advantage; (6) interference with contract; and (7) fraud.
Defendant Bathke initially filed five Fed.R.Civ.P. Rule 12 motions (hereafter, motions 1 through 5 with motion 2 being an alternative to motion 1). Defendant Burdick joins in these motions and offers two additional motions (motions 6 and 7). Plaintiffs concede defense motions three, four, and seven. Although plaintiffs' did not explicitly concede motion seven during oral argument, or argue against it, plaintiffs did concede motion seven should be granted in their memorandum of opposition subject to the preservation of plaintiffs' filing date. I note that Defendant Bathke has not joined Defendant Burdick's sixth and seventh motions; however, since plaintiff conceded motion four, Defendant Bathke is not exposed to plaintiffs fifth, sixth, and seventh causes of action. Therefore, plaintiffs' claims four, five, six, and seven are dismissed. Defendants' first, second (alternative to motion 1) and fifth motions, and defendant Burdick's sixth motion remain pending before this court.
Defendants' first motion to dismiss asserts that plaintiffs' first claim fails to allege deprivation of a right, as secured by the U.S. Constitution or federal law. Defendants' second motion moves in the alternative to make plaintiffs' first, claim more definite and certain by identifying a specific constitutional provision or federal statute. Defendants' fifth motion argues that all claims made by plaintiffs other than Galaxy Gaming of Oregon, LLC ("GGO"), Galaxy Gaming, LLC ("GGLLC"), Galaxy Gaming, Inc. ("GGI"), and Robert Saucier ("remaining plaintiffs") should be dismissed for failure to state a claim.
Finally, defendant Burdick moves pursuant to his sixth motion that plaintiffs' second and fourth causes of action (due process and equal protection) should be dismissed because they fail to state claims. For the reasons set forth below, defendants' motions are granted in part and denied in part.

BACKGROUND
Galaxy Gaming, LLC, a Nevada limited liability company ("GGLLC"), licensed intellectual property consisting of various casino games, invented by GGLLC manager Robert Saucier ("Saucier"), to other companies to sublicense to casinos. GGLLC issued a license to Galaxy Gaming of Oregon, LLC ("GGO"), which entitled it to sublicense its intellectual property in the State of Oregon ("state"). In early 2002, GGO entered into an agreement, allegedly procured through the efforts of Rockland Ridge Corporation ("Rockland"), with the Grande Ronde Tribe ("tribe") to sublicense intellectual property to the tribe. The tribe subsequently issued a "Letter of Intent" to do business with GGO.
The other specified Galaxy plaintiffs ("the regionals") are all limited liability companies of which GGLLC is the sole member and manager. The regionals license intellectual property for casino table games and side bets from GGLLC, which they in turn license to the casinos. Each regional company of GGLLC sells only to casinos in its respective state, and is licensed according to those state laws. Gross revenue for each regional is distributed as licensing fees to GGLLC, management fees to GGI, as well as spent on sales commissions and miscellaneous expenses. Galaxy Gaming, Inc. ("GGI"), a Nevada corporation, created in December 2006, is a successor entity of GGLLC and is the real party in interest for portions earned by GGLLC.
On March 21, 2002, GGO filed an application for a finding of suitability with the Oregon State Police ("OSP") pursuant to the requirements of the Tribal-State Compact for Regulation of Class III Gaming between the tribe and the state. OSP is responsible for conducting background investigations of gaming vendors who have applied for licensing by a tribe to do business in its tribal casino. OSP investigates those vendors, issues reports of these investigations, and makes licensing recommendations. The Tribal Gaming Commission considering the licensing application then makes an independent determination whether the vendor qualifies to do business with the tribe.
The Tribal-State Compact requires the investigation report conclude within 60 days from its receipt of the completed application and deposit, unless an extension request is granted by the tribe in writing. Plaintiffs' allege that OSP's investigation lasted approximately three years. Originally, OSP estimated the investigation cost to be $2,500, which was to be included with GGO's application. Plaintiffs allege they paid an additional $42,000 for the investigation based on additional monetary requests made by OSP.
Further, plaintiffs argue that they submitted additional application forms at the request of OSP by plaintiffs Rockland, Gary Saul ("Saul"), the sole stockholder and officer of Rockland, and Alixandra Saucier ("Alix"), the daughter of Saucier. Defendants argue that these various application forms are not the focus of this lawsuit but rather the specific application submitted by GGO. Defendants argue that OSP has completed that investigation.
Plaintiffs allege that defendants treated their application differently than other similarly situated applicants. Further, plaintiffs allege that defendants improperly billed the remainder of the investigation to a "training" account paid for by the Oregon tribes in an effort to cover up their prior wrongdoing. Plaintiffs argue that they have suffered extensive damages as a consequence of defendants' disregard for deprivation of their civil rights.
In addition, the regionals and other plaintiffs allege that they are entitled to commissions from future Galaxy contracts. The regionals allege that they would have profited from licensing contracts with Galaxy. The regionals argue that additional contracts would have generated additional revenues for GGLLC, GGI, and the other named plaintiffs. Defendants argue that these other plaintiffs do not have any definitive claim in this action because they are not parties to the license application and related investigation of GGO.

STANDARDS
Under Fed.R.Civ.P. 12(b)(6), once a claim has been stated adequately, it may be supported by "showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007). See also, Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984), cert, denied, 470 U.S. 1052,105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir.1983).

DISCUSSION

1. Federal Law Claims Against Defendants for Purposes of 42 U.S.C. § 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "(1) the defendant was acting under color of state law at the time the acts complained of were committed, and that (2) the defendant deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." 42 U.S.C. § 1983; Briley v. California, 564 F.2d 849, 853 (9th Cir.1977). A plaintiff may bring a § 1983 claim pursuant to a federal statute only if the statute confers individually enforceable rights onto a class of beneficiaries to which the plaintiff belongs. City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005). Further, to seek redress pursuant to § 1983, a plaintiff must assert a federal right was violated, and not merely a violation of federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 282-85, 122 S.Ct. 2268,153 L.Ed.2d 309 (2002).
The court agrees that plaintiffs fail to allege particular facts or a legal theory to state a claim for a federal right to honest government services. Plaintiffs allege that the right to honest government services is based on 18 U.S.C. § 1341, the criminal mail fraud statute, which states, in part:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined under this title or imprisoned not more than 20 years, or both.
Plaintiffs argue that 18 U.S.C. § 1341 does not necessarily provide a constitutional right to honest government services, but supports a criminal conviction for the violation of such rights. I agree however, with defendants assertion that the right to honest government services is not guaranteed by 18 U.S.C. § 1341 explicitly nor as an implied general right. The mail fraud statute does not confer individually enforceable rights onto a class of beneficiaries to which the plaintiffs belong. Although the right to honest government services is recognized pursuant to 18 U.S.C. § 1346, plaintiffs do not allege that defendants used the mail to further their scheme.
Plaintiffs rely on U.S. v. Cross, 128 F.3d 145 (3d Cir.1997), which found that defendants violated both 18 U.S.C. § 241, for interfering with fair and impartial trials, and 18 U.S.C. §§ 371 and 1341, for mail fraud. Again, Cross examines the right to honest government services within the context of mail fraud. That is not the situation at bar.
Further, a number of federal courts have held that 18 U.S.C. § 1341 does not create an implied private right, other than in the context of the Racketeer Influenced and Corrupt Organizations Act (RICO). See, e.g., Ryan v. Ohio Edison Co., 611 F.2d 1170, 1178 (6th Cir.1979); Bell v. Health-Mor, Inc., 549 F.2d 342, 346 (5th Cir.1977). Although "it not necessary that a complaint drawn under section 1983 set out the particular portion of the Constitution or law securing the right of which plaintiff has been deprived," Keniston v. Roberts, 717 F.2d 1295, 1299 (9th Cir. 1983), this court can not discern that such rights to honest government services exist pursuant to the Constitution or federal law under the facts alleged by plaintiffs.
Plaintiffs have failed to allege any federal law violations that would support a claim under 42 U.S.C. § 1983. Therefore, defendants' first motion to dismiss is granted and plaintiffs' first cause of action is dismissed. Moreover, defendants' second motion to make more definite and certain is denied as moot.

2. Due Process Claims

Defendants' sixth motion moves to dismiss plaintiffs' second cause of action (due process claim) for failure to state a claim. Defendants argue that plaintiffs' procedural or substantive due process claim fails because they have no constitutional right in their application for a finding of suitability. Further, defendants argue that plaintiffs are unable to show a property interest protected by the Constitution. Plaintiffs contend they have a protected interest in the investigation itself as opposed to an absolute right to a finding of suitability.
A plaintiff must prove the following three elements to assert a successful 42 U.S.C. § 1983 claim based upon a deprivation of liberty or property without due process: "a liberty or property interest protected by the Constitution; (2) deprivation of the interest by the government; [and] (3) lack of process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir.1993). The property interests must be defined by state law, not the due process clause itself. Id.
In addition, a "person must clearly have more than an abstract need or desire" for a property interest in a benefit. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The person must have a legitimate claim of entitlement to the government benefit, rather than just a unilateral expectation of it. Id. Where the regulations establishing entitlement to the benefit are mandatory in nature, and not discretionary, applicants have a property interest protectible under the Due Process Clause. A number of courts have ruled on whether a property interest exists based on the nature of the licensing, application, or certificate decision. See, e.g., Emmert Indus. Corp. v. City of Milwaukie, 450 F.Supp.2d 1164, 1175-77 (D.Or.2006); Thornton v. City of St. Helens, 425 F.3d 1158, 1164-65 (9th Cir.2005); Foss v. Nat'l Marine Fisheries Serv:, 161 F.3d 584, 588 (9th Cir.1998); Wedges/Ledges of Cal, Inc. v. City of Phoenix, 24 F.3d 56, 62-64 (9th Cir.1994); Jacobson v. Hannifin, 627 F.2d 177,179-80 (9th Cir.1980).
Plaintiffs argue that they have a property interest in a proper investigation to determine whether GGO is allowed to enter into an agreement with the Grande Ronde Tribe to sublicense intellectual property to the tribe. This court need not decide whether the Tribal-State Compact provisions and the Due Process Clause create such a property interest. It is necessary only at this time to determine whether the "possibility of such a property interest states a colorable claim for relief under section 1983 that is not `wholly insubstantial and frivolous.'" Keniston v. Roberts, 717 F.2d 1295, 1299 (9th Cir. 1983).
It is unclear whether the Tribal-State Compact provides OSP with some discretion in its decision-making or outlines mandatory procedures that OSP must abide by when recommending approval or denial of an licensing application. Furthermore, it is unclear how much influence OSP's recommendations have on the Tribal Gaming Commission's final decision. Therefore, it is reasonable to conclude that plaintiffs' allegations of insufficient process are not wholly insubstantial and frivolous.
Defendants also argue that procedural due process claims require that the plaintiff exhaust all administrative remedies before claiming that the state failed to provide due process. Plaintiffs assert that exhaustion of administrative remedies is not a pleading requirement within the context of a due process claim. Alternatively, plaintiffs state that Oregon law does not provide an administrative remedy for tribal-compact investigations.
It is undetermined whether OSP has decided to recommend to the Tribal Gaming Commission to deny GGO's licensing application. Plaintiffs state that "[d]efendants determined at a premature stage that [p]laintiffs would not receive a finding of suitability." Complaint, ¶ 35 (emphasis added). Defendants assert that OSP has completed its investigation. Memo, in Supp. of D. Burdick's Motions to Dismiss, p. 4. As such, it is unclear whether OSP has made a final and definite recommendation to the Tribal Gaming Commission. It is also undetermined whether the Tribal Gaming Commission has made a final decision to deny GGO's application.
Therefore, defendants' sixth motion to dismiss plaintiffs' second claim for due process pursuant to Fed.R.Civ.P. Rule 12(b)(6) is denied.

3. Equal Protection Claims

Defendant Burdick moves in his sixth motion for dismissal of plaintiffs' fourth cause of action, violation of equal protection. The court notes that plaintiffs previously conceded defendants' third motion moving to strike plaintiffs' fourth cause of action as redundant to plaintiffs' third cause of action. Memo, in Opp. to Def. Bathke's Motion to Dismiss, p. 5. Therefore, defendants' motion to dismiss plaintiffs fourth cause of action is granted.
I noted, however, that defendants intended to move to dismiss plaintiffs' third cause of action. Defendants eventually argue that plaintiffs' third cause of action, an equal protection claim, should be dismissed. Defendants provide a lengthy argument supporting their motion to dismiss. However, as a result of defendant's mistake, plaintiffs did not reply to defendant's argument in their brief. During oral argument, however, plaintiffs argued that they did not have an opportunity to "rehabilitate" their application, based on handbook guidelines and standards requiring such an opportunity, like other applicants have been previously allowed. Therefore, plaintiffs are granted an opportunity to respond to defendants' arguments that plaintiffs' equal protection claims should be dismissed. A response must be filed by March 31, 2008.

4. Remaining Plaintiffs' Claims Against Defendants Pursuant to 42 U.S.C. § 1983.

Defendants move to dismiss all claims made by the remaining twenty-eight plaintiffs for failure to state a claim. Remaining plaintiffs allege that they are seeking "foreseeable economic damages inflicted upon them by the wrongful acts committed against the first four plaintiffs." Pl. Opp. Memo., p. 5. Remaining plaintiffs, primarily the regionals, argue that they are entitled to commissions they would have received from contracts between them and GGI. Remaining plaintiffs assert a cause of action based on the U.S. Constitution's guarantee of "economic rights." Id.; Amended Complaint, ¶¶ 36-39, 51-52. Defendants argue that these remaining plaintiffs fail to allege any facts to show that defendants' actions affected any of their rights, particularly their involvement in the suitability investigation by OSP.
Courts have allowed parties to bring actions pursuant to federal law and the U.S. Constitution to protect their economic rights under 42 U.S.C. § 1983. See, e.g., Dennis v. Higgins, 498 U.S. 439, 111 S.Ct. 865,112 L.Ed.2d 969 (1991) (suits for violations of the commerce clause may be brought under § 1983); State of Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (respondents are entitled to attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 42 U.S.C. § 1988, arising under 42 U.S.C. § 1983 for deprivation of their rights under the Social Security Act, 42 U.S.C. § 601 et seq.). In addition, parties have enforced economic rights in general under the commerce, contract, takings, supremacy, and interstate privileges and immunities clause.
Although plaintiffs do not cite to a particular U.S. Constitutional amendment, this court discerns that economic rights to the contracts between "the regionals" and GGI may exist pursuant to the Constitution or federal law under the facts alleged by plaintiffs. There is a definite business relationship between the four main plaintiffs and the remaining plaintiffs. As such, there may have been some type of financial impact on the remaining plaintiffs if the investigation was improperly conducted.
Thus, remaining plaintiffs have sufficient evidence to survive a 12(b)(6) motion based on the U.S. Constitution's guarantee of economic rights.
Therefore, defendants' fifth motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6) is denied as to remaining plaintiffs' claims.

CONCLUSION
Defendants' motions for dismissal (docs. 11, 15) are granted in part and denied in part as follows: defendants' first motion to dismiss plaintiffs' first claim (docs. 11, 15) is granted and that claim is dismissed; further, defendants' alternative motion, motion two, to make more definite and certain (docs. 11, 15) is denied as moot; defendant Burdick's sixth motion to dismiss plaintiffs' fourth claim (doc. 15) is also granted as conceded by plaintiffs; defendant Burdick's sixth motion to dismiss plaintiffs' second claim (doc. 15) is denied; and defendants' fifth motion to dismiss all "remaining plaintiffs'" claim (docs. 11, 15) is denied. Remaining at issue in this lawsuit are: (1) plaintiffs' second claim alleging a due process violation; and (2) plaintiffs' third claim alleging an equal protection violation. Plaintiffs have an opportunity to respond to defendants' arguments to dismiss plaintiffs equal protection claim. This response must be filed by March 31, 2008.
IT IS SO ORDERED.