**REBEL VAN LINES, Plaintiff,**

v.

**CITY OF COMPTON, et al., Defendants.**

**No. CV 86–3115 MRP.**

United States District Court, C.D. California.

June 25, 1987.

Wesley Fenderson Jr., City Atty., Legrand H. Clegg II, Chief Deputy City Atty., Wilmont A. Odom, Ruth A. Rugley, Troy B. Smith, Deputy City Attys., Compton, Cal., for defendants.

Law Offices of Don A. Raig, La Jolla, Cal., for plaintiff.

## OPINION

PFAELZER, District Judge.

On April 27, 1987, this Court heard oral argument on defendants' motion for summary judgment. Having read the papers submitted and considered the arguments therein, the Court filed a Memorandum of Decision on May 8, 1987 denying the motion as to plaintiff's federal claims, and granting the motion as to the pendent state claims. Because some of the questions raised have not been considered in the Ninth Circuit, this Opinion sets forth in greater detail the basis of this Court's decision.

## I. BACKGROUND

This case arises out of the refusal of defendant, the City of Compton ("Compton"), to sell plaintiff Rebel Van Lines ("Rebel") one and one-half acres of city-owned land adjacent to Rebel's current location in Compton. Rebel is a moving company owned by a white man and a Native American woman, in a city allegedly dominated by blacks. Aside from the city, defendants include Compton's Community Redevelopment Agency ("CRA"), and three individual employees of the CRA: Myrna DeJean, Simon Richardson, and Tony Ybarra.

In early 1984, Billy D. Greek, the president and part-owner of Rebel, contacted the CRA about buying one and one-half acres of an undeveloped parcel of land which abutted Rebel's Compton lot. As a matter of state law and municipal ordinance, the CRA cannot itself decide to sell city land. The decision to sell land can only be made by a vote of the Urban Community Development Commission ("UCDC") after public notice and comment. The UCDC is not a defendant in this case. However, the CRA must recommend a sale before the UCDC votes on it, and the UCDC normally defers to the recommendations of the CRA's professional staff. In this case, after nearly a year of negotiations, Rebel and defendant DeJean, the director of the CRA, agreed on a purchase price of $240,360 for the parcel. On February 10, 1985, Rebel made a $24,036 "good faith deposit" for the property. Rebel claims that this deposit was a ten percent down-payment, while defendants claim it was to be refunded at such time as the UCDC approved the transaction, and Rebel paid the full price of the land.

Before the UCDC could approve the sale of the lot to Rebel, the deal came unraveled. The city discovered that Rebel's current lot violated city zoning ordinances re-

garding fences. Rebel agreed to bring its lot into compliance with the ordinances at a cost of $100,000, with the understanding that the CRA would recommend that the UCDC approve Rebel's purchase of the city lot once the repairs were completed. While this construction was underway, the city allowed Rebel to use the city lot to store building materials.

In late 1985 or early 1986, Rebel completed its construction to bring its lot up to zoning standards. However, by that time the CRA had received another proposal for the city-owned lot. CKW, Inc., a black-owned business, proposed to develop 2.64 acres of city-owned land (including the area for which Rebel had been negotiating) into an automotive repair park. The CRA, which had become increasingly concerned about the effects of Rebel's trucks on the area, recommended in March 1986 that the UCDC approve the CKW project and reject the Rebel offer. CKW's $500,000 bid for the 2.64 acres was more than Rebel's bid for the 1½ acres, but allegedly was financed by CRA with no cash deposit, favorable interest rates, and no payments for several years. Rebel also alleges that other non-minority buyers were willing to pay more than $500,000 for the parcel, and that this sum was less than the property's appraised value. Rebel alleges that CRA's refusal to recommend the sale of the lot to Rebel breached a contract between it and Rebel, and was motivated by racial discrimination. Rebel filed this suit on June 8, 1986, alleging causes of action under 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and 1988, as well as pendent state law claims for specific performance and conspiracy. Defendants have moved to dismiss each count of Rebel's complaint.

## II. STATE LAW COUNTS

California law provides that under some circumstances, specific performance is available as a remedy for breach of a contract to sell real estate.[1]    Cal.Civ.Code § 3387 (West 1987 Supp.).    Both sides agree that the statute of frauds question controls the availability of this remedy in this case. Rebel cannot point to any written evidence that Compton or the CRA ever agreed to sell it the parcel in question. The written evidence shows no unequivocal agreement; in its writings, the CRA always stated that the deal was contingent on UCDC approval. Rather, Rebel alleges an oral agreement, which is taken out of the statute of frauds by the doctrine of part performance. The facts which Rebel has been able to demonstrate would not raise a triable issue of part performance if asserted against a private litigant; they certainly do not constitute part performance as asserted against governmental entities.

■■■ The parties do not dispute that Rebel made a deposit of over $24,000 concerning the Compton property. As discussed above, the parties do contest whether this payment was or was not a down-payment on the property. The issue is immaterial; neither partial nor even total payment constitute "part performance" under California law. *Harrison v. Hanson*, 165 Cal.App.2d 370, 376, 331 P.2d 1084 (1958). Rebel claims that it made valuable improvements on its own property in reliance on its receiving the Compton lot. In some circumstances, this may constitute part performance, although normally such improvements must be made on the property which is the subject of the alleged contract to constitute part performance. *Stepp v. Williams*, 52 Cal.App. 237, 198 P. 661 (1921). However, the improvements which Rebel made were required by local zoning ordinances; performing a pre-existing legal duty cannot constitute part performance. Rebel also claims to have taken possession of the property in question. But the evidence indicates that Rebel only temporarily stored construction materials on the site, and did so only with the city's permission. This type of possession there-

---

1. The record is not clear concerning whether title to the Compton lot has passed to CKW. If title has passed, then the specific performance is of course unavailable as a remedy against the City of Compton. In some situations a subsequent purchaser (such as CKW) with notice of the claim of a prior attempted purchaser (such as Rebel) may be liable for specific performance; however, CKW has not been named as a defendant in this case.

fore does not constitute the actual, open, notorious possession necessary under California law. *Cf. Wood v. Anderson,* 199 Cal. 440, 249 P. 862 (1926); *see also* Witkin, *Summary of California Law,* Contracts § 249 (1973 and 1984 Supp.).[2]

■ Even if Rebel's possession of the subject property was enough to trigger the "part performance" doctrine against a private litigant, it does not necessarily follow that it would trigger the doctrine against a municipality. Part performance is one of several equitable doctrines that can estop a defendant from asserting the statute of frauds. California law does allow estoppel to run against governmental entities under some circumstances. *City of Long Beach v. Mansell,* 3 Cal.3d 462, 91 Cal.Rptr. 23, 476 P.2d 423 (1970). However, Cal. Health & Safety Code § 33433 (West 1973 and 1987 Supp.) provides that a redevelopment agency cannot dispose of property except by a vote, after notice and a hearing. Therefore as a matter of law, Rebel could not have reasonably relied on any promise made by a staff official of the CRA to sell property, since only the UCDC could approve such a sale. Both because there was no part performance and even if there had been, it would not have sufficed to estop a municipality, summary judgment against Rebel is appropriate on the state law specific performance claim.[3] Because a state law conspiracy claim cannot stand without a violation of some substantive state statute, summary judgment is appropriate on this claim as well.

### III. THE § 1983 COUNT

42 U.S.C. § 1983 provides liability whenever (1) a "person" (2) acting under color of state law (3) subjects or causes to be subjected (4) an individual to a deprivation (5) of a federally protected right. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, *Monell* recognized that a munici-pality (which it held could be a "person" for the purposes of § 1983) only "causes" an injury when the injury is a result of a custom or policy of the municipality. Defendants argue that a single instance of discriminatory conduct cannot constitute a custom or policy of discrimination.

■ Defendants' contention fails for a number of reasons. Even if it were true, it would not exculpate the individual defendants. (Individuals can cause a deprivation of rights when they act in the absence of or even against municipal policy, so long as the action is taken under color of state law.) However, a single act of a municipal policy-maker *can* establish liability under § 1983, if the act establishes policy. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).

■ Real estate transactions are not *per se* policy-making decisions. Many such transactions, for instance the rental of apartments by a public housing authority, or the sale of tract homes by a redevelopment agency, are purely ministerial acts. However, the decision to sell a large, valuable piece of commercial real estate is without doubt a policy decision. Indeed, the declaration of defendant DeJean makes it clear that the decision to recommend the acceptance of the CKW proposal over that of Rebel was a policy decision concerning the optimum type of redevelopment which the city wanted to encourage. The decision balanced factors such as job-creation, tax revenues, and environmental impact. If a jury finds that racial discrimination was also a motivating factor in the decision, then the jury might also be able to find a custom or policy sufficient to impose municipal liability, even without evidence of other instances of discrimination.

■ Defendants also argue in essence that Rebel has not made a prima facie showing of racial discrimination in this case. Rebel has made no showing at all in

---

2. Although California has a strong public policy against the sort of racial discrimination alleged in this suit, Rebel has not suggested any way in which this allegation could affect the issue of whether or not there was part performance of an oral contract in this case.

3. The Court expresses no opinion on the availability of specific performance as a remedy for the federal civil rights claims discussed below.

support of its assertions that defendants sold the 2.64 acres to CKW for less than its appraised value, or for less than offers made by white-owned businesses, although defendants do not deny that CKW received more favorable financing than that offered Rebel. However, even without this evidence, Rebel's claim is sufficient to survive a motion for summary judgment. Rebel has demonstrated that defendants, who are blacks, chose to recommend selling to a black-owned business, some time after having reached, at least in principle, an agreement to recommend sale to a business owned and operated by non-blacks. It is not necessary to show direct evidence of discriminatory intent to prove a § 1983 claim; circumstantial evidence alone can suffice. Defendants have advanced potentially legitimate business reasons for their decision to sell to CKW rather than Rebel, but a rational jury could choose to disbelieve defendants' explanation and believe Rebel. The issue of discriminatory intent is an issue of fact for the jury. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Defendants' motion for summary judgment on the § 1983 count must be denied.

## IV. THE § 1985(3) COUNT

42 U.S.C. § 1985(3) makes actionable conspiracies to violate an individual's civil rights. Defendants do not dispute that Rebel has alleged a sufficient class-based animus, in this case discrimination based on race, to state a claim under § 1985(3). *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (discrimination by black employer against white employee); *United Brother-*

*hood of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (discussing class-based animus requirement of § 1985).[4] Moreover, since defendants were acting under color of state law, Rebel's claim of a denial of equal protection under the Fourteenth Amendment is actionable under § 1985(3). *Terry Properties, Inc. v. Standard Oil Co.*, 799 F.2d 1523, 1533–34 (11th Cir.1986). However, defendants argue that under the "intra-corporate conspiracy" doctrine, Rebel has not stated a conspiracy actionable under § 1985(3). *See Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir.1972) (Stevens, J.).

*Dombrowski*, analogizing to the "intra-corporate conspiracy" doctrine in the antitrust area, held that when two executives make a single business decision to discriminate in furtherance of the purposes of the business, this decision cannot be called a conspiracy for the purpose of § 1985(3). *Cf. Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (intra-corporate conspiracy doctrine in antitrust context).[5] *Dombrowski* involved a real estate company's decision not to lease office space to a civil rights lawyer based on the race of the lawyer's clients.[6] A number of other circuits have agreed with *Dombrowski*. *See Buschi v. Kirven*, 775 F.2d 1240, 1251–52 (4th Cir.1985); *Doherty v. American Motors Corp.*, 728 F.2d 334, 339–40 (6th Cir. 1984); *Girard v. 94th Street & Fifth Avenue Corp.*, 530 F.2d 66, 70–72 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Baker v. Stuart Broadcasting Co.*, 505 F.2d 181 (8th Cir. 1974); *see also, Weaver v. Gross*, 605

**4.** See also this Court's discussion in *California Republican Party v. Mercier*, 652 F.Supp. 928, 936–37 (C.D.Cal.1986).

**5.** In the antitrust context, there is a basic distinction between action by one company, which is only prohibited if it threatens to monopolize a given market, and action in concert by different companies, which is prohibited whenever it threatens to unreasonably restrain trade. The intra-enterprise conspiracy exception in antitrust law is necessary to prevent antitrust plaintiffs from being able to get around the more stringent requirements of a monopolization ac-

tion and hold a single corporate defendant liable on the less stringent conspiracy to restrain trade theory. *Copperweld*, 467 U.S. at 767–69, 104 S.Ct. at 2739–41. As discussed below, no similar concerns justify insulating the actions of a single company in the context of civil rights.

**6.** This was only an alternate holding; the Court also held that the suit was barred because a claim of a denial of equal protection under the Fourteenth Amendment, the alleged constitutional violation at issue, does not state a claim in the absence of state action. 459 F.2d at 196.

F.Supp. 210, 214 (D.D.C.1985). However, a number of other circuits have disagreed with the extension of the intra-corporate conspiracy doctrine to claims under § 1985(3). *Novotny v. Great American Fed. Savings & Loan Assn.*, 584 F.2d 1235, 1256–59 (3d Cir.1978) (en banc), *rev'd on other grds.*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Stathos v. Bowden*, 728 F.2d 15, 20–21 (1st Cir.1984) (noting that different purposes of antitrust laws and civil rights laws makes any analogy inappropriate); *United States v. Hartley*, 678 F.2d 961, 971–72 (11th Cir.1982) (holding intra-corporate conspiracy doctrine has no place outside of antitrust laws); *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 603 (5th Cir.1981)[7]; *see also Jacobs v. Board of Regents*, 473 F.Supp. 663, 669–71 (S.D.Fla.1979) (collecting cases). The academic literature counsels against the extension of the intra-corporate conspiracy exception to the area of civil rights. Note, Intracorporate Conspiracies Under 42 U.S.C. § 1985(c), 92 Harv.L.Rev. 70 (1978); Note, Intracorporate Conspiracies Under 42 U.S.C. § 1985(c), 13 Ga.L.Rev. 591 (1979).

The Supreme Court in *Novotny* noted the Third Circuit's resolution of this issue, 442 U.S. at 370, 99 S.Ct. at 2347–48, but did not discuss the issue itself, and has since noted that the issue is still undecided. *Copperweld*, 467 U.S. at 775 n. 24, 104 S.Ct. at 2744 n. 24. A few courts have extended *Dombrowski* to conspiracies alleged between employees of a governmental entity. *See, e.g., Gladden v. Barry*, 558 F.Supp. 676, 679 (D.D.C.1983) (city government); *Edmonds v. Dillin*, 485 F.Supp. 722, 729 (N.D.Ohio 1980) (same); *Lieberman v.*

*Gant*, 474 F.Supp. 848, 875 (D.Conn.1979) (state university) *aff'd*, 630 F.2d 60 (2d Cir.1980). Defendants in this case argue that their decisions made in furtherance of the purposes of the CRA cannot be considered a conspiracy, on the authority of *Dombrowski*.

The Ninth Circuit has never directly addressed the "intra-corporate conspiracy" exception to § 1985(3). *See Padway v. Palches*, 665 F.2d 965, 968–69 (9th Cir.1982) (expressly reserving issue). The Circuit has several times decided cases involving § 1985 allegations against executives of a single corporation, and has never dismissed the claims on the ground that they did not state a conspiracy. *Id.; see also Arnold v. IBM Corp.*, 637 F.2d 1350 (9th Cir.1981); *DeSantis v. Pacific Tel. & Tel. Co.*, 608 F.2d 327 (9th Cir.1979).[8] As discussed above, the Supreme Court could have disposed of *Novotny* on this ground, but chose not to do so. Four years later, the Supreme Court once again could have disposed of a case on this ground, but chose not to do so. *Scott*, 463 U.S. at 827–28, 103 S.Ct. at 3355–56 (conspiracy alleged within union council). After these cases, which all declined to apply the intra-enterprise conspiracy doctrine, the *Dombrowski* exception to § 1985(3) is of doubtful vitality in this circuit.

*Dombrowski* limited its holding to situations where the business made a single decision to discriminate. 457 F.2d at 196; *see also Girard*, 530 F.2d at 71 (noting distinction for multiple acts of discrimination). However, the analytical soundness of this distinction is doubtful; while some courts have required one overt act in fur-

---

7. *Dussouy* is particularly significant because it was the Fifth Circuit in *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir.1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953), which originally developed the intra-corporate conspiracy exception in the antitrust context.

8. *Arnold* and *DeSantis* were, however, both dismissed on other grounds. *Padway* remanded the § 1985(3) claim to the district court for further factual findings and reargument. A district court case, *Laxalt v. McClatchy*, 622 F.Supp. 737, 745 (D.Nev.1985), did apply the *Dombrowski* doctrine as a matter of Nevada

state law to an allegation of civil conspiracy to deprive the plaintiff of economic advantage and contractual relationships. *Cf. Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1526 (9th Cir. 1985) (California law) (single corporate officer cannot "conspire" with that corporation). This case involves allegations of conspiracy against several individuals within the CRA. This Court need not consider whether one employee could "conspire" with his public or private corporate employer; three employees certainly could so conspire. *See Clement v. American Greetings Corp.*, 636 F.Supp. 1326, 1333 (S.D.Cal.1986) (distinguishing *Davis & Cox* on this basis).

therance of a conspiracy to ground liability, no other courts have demanded two or more completed offenses to establish a conspiracy. The defining characteristic of a conspiracy is an agreement to commit wrongful acts, not the number of wrongful acts committed to further the agreement.[9] As the circuit court noted in *Novotny*, aside from antitrust, there is no other body of law in which the fact that two or more people make an agreement in furtherance of their business purposes takes that agreement out of the realm of conspiracy law. 584 F.2d at 1258 n. 122; *see also Hartley*, 678 F.2d at 971–72 (holding intracorporate exception only applies to antitrust law); *United States v. Tille*, 729 F.2d 615 (9th Cir.) (conspiracy liability upheld for members of a single business, in context of RICO), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984).[10] Unlike the area of antitrust, where actions by a single business are presumed to be procompetitive and therefore beneficial to society, there is no reason to believe that discrimination by an individual business is less harmful than discrimination by multiple businesses, or that discrimination by a single business deserves to be protected because it confers any benefit on society. *Stathos*, 728 F.2d at 21.[11] Conspirators should not be able to avoid the civil rights laws merely by incorporating before they commit their discriminatory acts. Eisen-

berg, *Civil Rights Legislation*, 454 (1981). Not only is the precedential value of *Dombrowski* questionable; so too is its logical persuasiveness.

However, this Court need not address the application of the intra-corporate exception to § 1985(3) to all circumstances in order to decide this motion. Even if *Dombrowski* were good law as applied to a conspiracy within a private business, it cannot apply to conspiracies within governmental entities such as those in this case.[12] Even before the Supreme Court widened the scope of § 1985(3) to include purely private conspiracies,[13] the Court had routinely applied the statute to conspiracies within a single governmental entity. *See, e.g., United States v. Price*, 383 U.S. 787, 796–807, 86 S.Ct. 1152, 1158–63, 16 L.Ed.2d 267 (1966) (interpreting criminal counterpart of § 1985) (members of police force); *United States v. Williams*, 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951) (same) (same); *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (same) (same); *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) (same) (commissioners of elections). Racial discrimination can never further any "business purpose" of a governmental entity. To apply the intra-corporate conspiracy exception to public entities and officials would immunize official policies of discrimi-

9. A number of courts have noted this conceptual difficulty with the *Dombrowski* doctrine as it has been applied to multiple acts of discrimination. *Weaver*, 605 F.Supp. at 214–15; *Coley v. M & M Mars, Inc.*, 461 F.Supp. 1073, 1076 (M.D.Ga. 1978).

10. *See also Mauriber v. Shearson American Express, Inc.*, 567 F.Supp. 1231, 1241 (S.D.N.Y. 1983) (refusing to extend intra-corporate conspiracy doctrine to context of civil RICO). The refusal of courts such as *Mauriber, Hartley*, and *Tille* to extend the intra-corporate conspiracy doctrine from antitrust to the closely related area of RICO shows the very narrow scope of this doctrine. The RICO statute, 18 U.S.C. § 1961 *et seq.*, was explicitly modeled on federal antitrust laws. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3280–81, 87 L.Ed.2d 346 (1985).

11. None of the courts to have applied the intra-corporate conspiracy exception to § 1985(3) have argued that there is any support for the exception in the legislative history of the Ku

Klux Klan Act of 1871, and indeed, there is none. Nor does the exception appear to further any of the policy goals intended by the authors of this statute.

12. The scattered cases to have extended the exception to conspiracies within a single governmental entity all appear to have done so without any analysis of the difference between discrimination in private businesses and in public bodies. *See, e.g., Lieberman*, 474 F.Supp. at 875. In several of these cases, the holding is unnecessary; analysis under other statutory schemes demonstrated that no discrimination had in fact taken place. *Id.* at 866–73. In other cases, the holding was largely irrelevant, because the plaintiffs were allowed to pursue factually identical theories under different civil rights laws. *See, e.g., Gladden*, 558 F.Supp. at 678–80.

13. *See Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

nation. This result would contravene the law as it now exists. *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36.[14] An agreement to discriminate between two or more individuals or government bodies is a conspiracy, and when racial discrimination takes this form, it is actionable under § 1985(3). Defendant's motion for summary judgment on the § 1985(3) count must be denied.

## V. THE §§ 1981, 1982, AND 1988 COUNTS

■ 42 U.S.C. §§ 1981 and 1982 prohibit racial discrimination in contractual transactions and property transactions, respectively. A racially motivated refusal to enter into a contract for the sale of real estate implicates both sections. *Sims v. Order of United Commercial Travelers of America,* 343 F.Supp. 112, 115 (D.Mass.1972). Defendants' only argument in favor of summary judgment on these counts is that they had legitimate business reasons for choosing CKW over Rebel. As explained above, a rational jury could choose to disbelieve defendants on this point, and find the requisite discriminatory intent. Rebel also claims attorney's fees under 42 U.S.C. § 1988; this claim survives if any of the federal civil rights counts which impose liability survive. Therefore, defendants' motion for summary judgment on these counts must be denied.

IT IS THEREFORE ORDERED that,

1. Defendants' motion for summary judgment as to plaintiff's causes of action for specific performance and conspiracy under state law is granted, and

2. Defendants' motion for summary judgment as to plaintiff's causes of action under 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and plaintiff's claim under § 1988 is denied.

---

**14.** *Monell* addressed municipal liability under § 1983. However, if the intra-corporate conspiracy doctrine really is good law outside of antitrust, and if this doctrine really does apply

to conspiracies within governmental entities, there would seem to be little reason to restrict it to conspiracies alleged under § 1985, and not under § 1983 as well.