Filed 12/14/15  Reaves v. County of Los Angeles CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GALE REAVES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents. | B255920<br><br>(Los Angeles County<br>Super. Ct. No. BC489065) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed in part and reversed in part with directions.

Law Offices of Akudinobi & Ikonte, Emmanuel C. Akudinobi and Chijioke O. Ikonte for Plaintiff and Appellant.

Gutierrez, Preciado & House and Calvin House for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiff Gale Reaves appeals from a judgment entered after the trial court granted a motion for summary judgment brought by defendant County of Los Angeles (County) and dismissed the action with prejudice as to defendants Marina Rojas, Andrea Washington, and LaCarla Williams after sustaining their demurrer without leave to amend. On appeal, Reaves challenges the trial court's (1) ruling barring her from conducting a deposition of the County's person most knowledgeable as to certain matters unless she individually noticed a deposition as to each matter; (2) refusal to consider her opposition to summary judgment; and (3) denial of leave to amend her conspiracy causes of action as to the individual defendants after sustaining their demurrer. We affirm as to the summary judgment but reverse as to the denial of leave to amend.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

## A. *Reaves' Original Through Seconded Amended Complaints; Defendants' Demurrers; the County's Answer to the Second Amended Complaint*

Reaves filed her complaint in this action on July 25, 2012 against the County,[2] Rojas, Washington, and Williams. She alleged causes of action against the County for

---

[1]      In their briefs, the parties make reference to various matters which are unsupported by any citation to the record. Rule 8.204(a)(1)(C) of the California Rules of Court requires that a party's briefs support any reference to a matter in the record by a citation to the record. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 284; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) To the extent the parties have made reference to factual or procedural matters without record references, we disregard such matters. (*In re Marriage of E.U. & J.E.* (2012) 212 Cal.App.4th 1377, 1379, fn. 2; *Gotschall v. Daley* (2002) 96 Cal.App.4th 479, 481, fn. 1.)

[2]      Reaves erroneously named the County in her complaint as the County Probation Department.

race discrimination and retaliation in violation of Government Code section 12940 et seq., the Fair Employment and Housing Act (FEHA), and against all defendants for conspiracy to interfere with her civil rights under sections 1983 and 1985(3) of title 42 of the United States Code (sections 1983 and 1985(3)).

Defendants filed a demurrer as to the conspiracy causes of action on November 21, 2012. They based their demurrer on the "'intra-corporate conspiracy' doctrine [which] applies in Section 1985 cases, holding that a governmental body cannot conspire with itself, and that individual members of a governmental body cannot conspire when they act in their official capacity to take official acts on behalf of the governing body." (*Rabkin v. Dean* (N.D. Cal. 1994) 856 F.Supp. 543, 551.)

In response to the demurrer and prior to the hearing on it, Reaves filed a first amended complaint removing the County from the two conspiracy causes of action. The individual defendants again demurred to the conspiracy causes of action under the intra-corporate conspiracy doctrine. Reaves opposed the demurrer on the ground the individual defendants "are not immunized under the intra-corporate conspiracy doctrines because they were sued in their individual and personal capacities as opposed to their official capacities." The individual defendants responded that naming them in their personal capacities did not exempt them from application of the intra-corporate conspiracy doctrine, because it "bars conspiracy claims against corporate or government actors accused of conspiring together within an organization . . . . [Citation.]" (*Rehberg v. Paulk* (11th Cir. 2010) 611 F.3d 828, 855.)

On January 10, 2013, the trial court sustained the individual defendants' demurrer without leave to amend as to the conspiracy causes of action, the only causes of action alleged against them. Defendants filed their answer to the first amended complaint on January 22, 2013.[3]

---

[3]     It is not entirely clear why the individual defendants filed an answer to the first amended complaint after the trial court sustained their demurrer without leave to amend. Nevertheless, they filed an answer to the complaint.

In April 2013, after Reaves' counsel failed to appear at a case management conference, the trial court dismissed the action. Reaves moved the court to set aside the dismissal, and the trial court granted the motion. In conjunction with reinstatement of the action, on July 2, 2013, the individual defendants were dismissed from it.

Reaves filed a second amended complaint against the County on July 10, 2013. It again included causes of action against the County for race discrimination and retaliation in violation of FEHA. It also added causes of action for sex discrimination in violation of FEHA and race discrimination and retaliation in violation of 42 United States Code section 1981. The County answered the second amended complaint on August 15, 2013.

## B. *Discovery*

Reaves propounded a request for admissions and form interrogatories on the County on August 12, 2013. The County responded on October 21, 2013.

Reaves propounded a request for production of documents on the County on November 7, 2013. The County responded on December 12, 2013 and produced 2,780 documents.

Reaves filed a motion to compel only with respect to the form interrogatories. This motion was granted in part on January 22, 2014.

## C. *The County's Summary Judgment Motion*

The County filed a motion for summary judgment or, in the alternative, summary adjudication, on December 30, 2013. The trial court set the motion for hearing on March 14, 2014. The County argued it was entitled to judgment because Reaves could not present any evidence of discriminatory treatment, the County had legitimate, nondiscriminatory and nonretaliatory reasons for disciplining Reaves, and the alleged adverse employment action occurred prior to the alleged protected activity.

**D.** *Reaves' Person Most Knowledgeable Deposition and Application To Continue the Hearing on the Summary Judgment Motion*

On February 19, 2014, just eight days before her opposition to the summary judgment motion was due, Reaves noticed the deposition of the County's person most knowledgeable as to 21 categories of personnel matters, policies and procedures in effect within the last 10 years. The notice also requested production of 23 categories of documents.

Also on February 19, 2014, Reaves filed an ex parte application to continue the hearing date for the County's summary judgment motion. Reaves based her request on the trial court's failure to issue an order concerning attorney's fees as well as a compliance date for supplemental responses to her form interrogatories. Reaves claimed a continuance was necessary because she had not completed discovery.

The County opposed Reaves' application to continue the hearing on the summary judgment motion on the ground it had provided Reaves with all the documents she had requested. Additionally, the County claimed Reaves had been dilatory in requesting and responding to discovery and therefore was not entitled to a continuance.

The trial court granted Reaves' ex parte application and continued the hearing on the summary judgment motion 12 days to March 26, 2014. It ordered the County to provide the supplemental responses to Reaves' form interrogatories that it had ordered on January 22, 2014.

According to Reaves' notice of ruling, the court also ruled, sua sponte and over Reaves' objection, that Reaves "cannot take the deposition of the County's [p]erson(s) [m]ost [k]nowledgeable which was noticed for March 5, 2014, unless, [Reaves] re-noticed each of the 21 categories denoted in her notice of deposition as 21 separate depositions." This ruling, however, is not included within the trial court's minute order, and there is no reporter's transcript of the hearing.

On February 27, 2014, the County served Reaves with an objection to her notice of deposition of the person most knowledgeable. It noted that it was "attempting to produce witnesses and documents" in response to Reaves' notice. It stated that although

5

the trial court ruled that her original notice was inadequate, Reaves had refused to re-notice any depositions. The County objected to her notice on the grounds the document demand was duplicative of previous discovery requests, many of the requests were overbroad, some of the employment records requested were protected and could not be released without a court order, and the discovery request did not comply with the court's civility guidelines.

Reaves filed a petition for writ of mandate on March 10, 2014, just two days before her opposition to the summary judgment was due and 19 days after the court's ruling concerning the deposition notice, seeking to vacate the order requiring her to re-notice 21 persons most knowledgeable depositions and a stay of the proceedings. Two days later, on March 12, we summarily denied the petition.

### E. *Reaves' Opposition to Summary Judgment and the Trial Court's Ruling*

Reaves filed her opposition to the County's summary judgment motion on March 24, 2014, two days before the hearing. Reaves claimed to have sufficient evidence of discrimination and retaliation to raise triable issues of material fact on those claims.

At the hearing on the motion, the trial court stated: "This morning I became aware that opposition papers to the motion for summary judgment had been filed on March 24th. You can't do that. It's way too late. And my inclination is to strike them all."

Reaves' counsel argued that the trial court had discretion to read the opposition papers. In addition, he "believe[d] that the summary judgment should be equitably [tolled] because of the fact that I took up the writ to see whether or not the Court of Appeal will revise the denial of my right to take depositions as noticed, absent [re]noticing the depositions. Apparently, the Court of Appeal denied the writ summarily without any explanation. In light of the fact that I elected that remedy, there is no prejudice to the [County], in the sense that we have not completed the discovery in this case."

6

The trial court questioned whether counsel filed a motion for a continuance of the time in which to file opposition to the summary judgment motion based upon the pending writ petition. Counsel said he did not.

The trial court noted "that this is an old, old case where there has been [a] tremendous amount of time to accomplish discovery." The court added, "And all this last minute scurrying around, it's not really grounds for me to continue anything. You didn't even ask for permission to file your papers late. You simply walked in and filed a bunch of late papers. I haven't had any chance to review these. They didn't hit my desk until this morning." Reaves' counsel acknowledged the late filing but argued "that in light of my seeking the writ of mandate, that under equitable tolling provision of our laws that the summary judgment should be equitably [tolled]."

The court observed that the summary judgment motion was filed in December 2013, "[a]nd, so, time after time opposition dates came and went," and the court granted an extension of time in which to file opposition. Counsel for the County added that "the writ was filed on March 10th, and it was denied on March 12th. If he gets two days of [tolling], his opposition is still over a week old. So, I don't think that really had anything to do with what happened here." Reaves' counsel responded that by the time the writ was denied, it was too late to request a continuance, so he just filed the opposition. "But more importantly, . . . the issue of the discovery in this case, which is the [person most knowledgeable] deposition that I noticed, has not been conducted."

The trial court told counsel, "Yeah. Well, you had almost two years now to do it. So, you're not getting any sympathy on that, sir." Counsel pointed out that he noticed the deposition before the discovery cutoff date. The trial court told him, "Forget your discovery cutoff. The plaintiff has the burden of moving along their lawsuit. First of all, they are supposed to have probable cause to file the lawsuit in the first place. So, you should have had enough facts available to you right from the get go to oppose a motion for summary judgment. . . . Thereafter, it's your job, not to wait until the discovery cutoff, but to pursue your lawsuit, do your discovery, get ready for trial. You didn't do any of that. So, I'm sorry. I am not going to consider your opposition papers."

7

The trial court granted the summary judgment motion, explaining that "[b]ecause [Reaves] submitted her opposition papers several days late after the Court granted her an additional two weeks to file her opposition, and because the late filing prevented the Court from reviewing the opposition papers and prevented the [County] from responding to them, the Court ordered [her] opposition papers stricken." The court also reviewed the evidence submitted by the County and concluded that the County met its burden of establishing that no triable issue of material fact existed and the County was entitled to judgment in its favor as a matter of law.

The court entered judgment in favor of all defendants on April 10, 2014.

## DISCUSSION

### A. *Person Most Knowledgeable Deposition*

Reaves contends the trial court abused its discretion in barring her from conducting a deposition of the County's person most knowledgeable about 21 matters until she re-noticed individual depositions as to each matter.

Preliminarily, we address the County's claim that there is nothing for us to review, because the record does not contain an order that Reaves re-notice individual depositions, only Reaves' notice of ruling. In support of this claim, the County relies on *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, in which the court rejected a claim of error on appeal on the ground there was "no indication in the record" of the claimed erroneous order. (*Id.* at p. 1027.) The court observed that "[t]he sole support cited" for the claim of error was "a notice of ruling prepared by [the appellant's] counsel. A notice of ruling prepared by counsel is not an order by the court, might not accurately reflect the court's ruling, and is not dispositive in these circumstances." (*Id.* at p. 1027, fn. 6.)

Here, however, in the County's opposition to Reaves' notice of deposition, the County acknowledged that "[o]n February 19, 2014, the Court declared [Reaves'] Notice

8

of Deposition inadequate to obtain deposition testimony." We therefore reject the County's claim that there is nothing for us to review.

"'Management of discovery generally lies within the sound discretion of the trial court.' [Citation.] 'Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was "no legal justification" for the order granting or denying the discovery in question.' [Citation.]" (*Maldonado v. Superior Court* (2002) 94 Cal.App.4th 1390, 1396-1397; see also *People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 ["a trial court's ruling on a discovery motion 'will be overturned upon a prerogative writ if there is no substantial basis for the manner in which trial court discretion was exercised or if the trial court applied a patently improper standard of decision'"].)

Code of Civil Procedure section 2025.230 provides: "If the deponent named is not a natural person, the deposition notice shall describe with reasonable particularity the matters on which examination is requested. In that event, the deponent shall designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to the deponent." The "reasonable particularity" language "in the statute implies a requirement such categories be reasonably particularized from the standpoint of the party who is subjected to the burden of producing the materials. Any other interpretation places too great a burden on the party on whom the demand is made." (*Calcor Space Facility, Inc. v. Superior Court* (1997) 53 Cal.App.4th 216, 218, 222.)

Here, Reaves' notice of deposition of person most knowledgeable sought to depose the person or persons most knowledgeable on a number of well defined different areas, including policies and procedures, investigation of complaints, and personnel matters. It also sought the production of documents related to these areas. The trial court

9

ruled Reaves had to "re-notice[] each of the 21 categories denoted in her notice of deposition as 21 separate depositions."[4]

Reaves' notice complied with the statutory requirements, and the trial court abused its discretion in requiring her to notice 21 separate depositions. Code of Civil Procedure section 2025.230 does not limit a notice of deposition to a single topic; it specifically refers to "matters." As a practical matter, a person most knowledgeable deposition will include multiple topics. (See, e.g., *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 313-314.) Moreover, Reaves' notice described the matters on which she sought discovery with "reasonable particularity." (*Calcor Space Facility, Inc. v. Superior Court*, *supra*, 53 Cal.App.4th at p. 218.) To the extent the County had objections to specific requests, they could be made during the deposition and addressed through a motion to compel or a motion for a protective order. (See, e.g., *Nativi*, *supra*, at pp. 314-315.)

That the trial court abused its discretion in ruling Reaves was required to notice 21 separate depositions does not end our inquiry, however. "A fundamental rule of appellate review is that the appellant must affirmatively show *prejudicial* error. [Citation.]" (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 403; accord, *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1196-1197.) Reaves makes no attempt to show how she was prejudiced by the trial court's ruling. There is nothing in the record to indicate that Reaves attempted to comply with the trial court's ruling and then faced problems in scheduling or conducting the individual depositions. Reaves also does not indicate how testimony she sought would have assisted her case. Additionally, the record indicates the County had already produced 2,780 documents, and it appears based on the County's

---

4       Even though the trial court ruled on the issue, the County served a written objection to the notice on a number of grounds, including that the document demand was duplicative of previous discovery requests, many of the requests were overbroad, and some of the employment records requested were protected and could not be released without a court order. It served the notice after the trial court's February 19 ruling.

objection many of the documents sought in Reaves' notice of deposition of person most knowledgeable were duplicative. Reaves does not indicate what documents had not yet been produced or how they might have assisted her case. (*Carolina Casualty Ins. Co.*, *supra*, at pp. 1197-1198.) In the absence of any showing of prejudice, Reaves has failed to meet her burden of demonstrating reversible error. (*Id*. at pp. 1196-1197.)

## B. *Striking of Reaves' Late Opposition Papers*

Reaves further contends the trial court abused its discretion in striking her untimely-filed opposition to summary judgment. More specifically, she argues that the trial court should have applied the doctrine of equitable tolling to permit the filing of the papers, the County failed to articulate any particular prejudice which would result from consideration of her opposition papers, and the imposition of what amounted to a terminating sanction was unjustified.

### 1. *Equitable Tolling Is Inapplicable*

As the County points out, the doctrine of equitable tolling applies to a statute of limitations. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99; *Addison v. State of California* (1978) 21 Cal.3d 313, 316.) It is used to "'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.' [Citation.]" (*McDonald*, *supra*, at p. 99.) Reaves cites no authority for the proposition that it applies to statutory time periods in which to file paperwork during the course of litigation.

Moreover, even assuming equitable tolling was applicable here, the writ petition was pending with this court only two days. As noted by the County during the hearing, any tolling would have been for only two days, and the opposition papers were filed 12 days late.

11

2. *Refusal To Consider Late-Filed Opposition*

Code of Civil Procedure section 437c, subdivision (b)(2), provides: "Any opposition to the motion shall be served and filed not less than 14 days preceding the noticed or continued date of hearing, unless the court for good cause orders otherwise. . . ." This subdivision "forbids the filing of any opposition papers less than 14 days prior to the scheduled hearing, and the case law has been strict in requiring good cause to be shown before late filed papers will be accepted." (*Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 624-625, disapproved on another ground in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6; accord, *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765.)

The "trial court has broad discretion under rule 3.1300(d) of the California Rules of Court to refuse to consider papers served and filed beyond the deadline without a prior court order finding good cause for late submission. [Citations.]" (*Bozzi v. Nordstrom, Inc.*, *supra*, 186 Cal.App.4th at p. 765.) We review the trial court's refusal to consider late-filed papers for abuse of discretion. (*Ibid*.) We find none here.

The court found Reaves did not have good cause for filing her opposition late. The case had been filed 20 months prior to the scheduled summary judgment hearing. There had been discovery taken in the case. The motion for summary judgment was filed in December 2013 for a March 14 hearing date. The court had already granted Reaves an extension of time in which to file her opposition. Reaves' writ petition—filed some three weeks after the ruling regarding the person most knowledgeable deposition was made—was summarily denied in two days. Neither the ruling nor the writ proceeding prevented Reaves from filing her opposition or requesting a continuance under subdivision (h) of Code of Civil Procedure section 437c. Clearly, the late opposition was the result of a tactical decision made in reliance on a request for an immediate stay with the Court of Appeal, without consideration of the possibility the request might be denied.

In addition, the County objected to the late opposition because it did not have an opportunity to file a reply. The court had not had an opportunity to review the opposition papers, given that they were filed only two days prior to the hearing. A jury trial was set

12

to start 19 days later, and one month earlier the court had indicated that the next available jury trial dates were one year away. Consideration of the late papers would have required giving the County an opportunity to respond, and the County would have had to use some of the little remaining time before trial to focus on its response. There would have been prejudice to the County's trial preparation had the court allowed late filing of the opposition papers.

Moreover, as the trial court observed, Reaves created her own situation. She did not notice the person most knowledgeable deposition until February 19—two months after the County filed its motion for summary judgment. The deposition was set for March 5—after the date the opposition was originally due, February 28. Reaves offered no explanation for the delay in noticing the person most knowledgeable deposition, and we cannot conceive of one.

Under the circumstances, the trial court did not abuse its discretion in refusing to consider Reaves' late-filed opposition papers. (*Bozzi v. Nordstrom, Inc.*, *supra*, 186 Cal.App.4th at p. 765.)


3. *Treatment as a Terminating Sanction*

Reaves also contends that the trial court's granting of summary judgment based on her "procedural error of filing her opposition papers late is the equivalent of a terminating sanction. [Citations.] Absent a showing of willfulness by Reaves or a history of abuse of the pretrial procedures set by our judicial system, the trial court abused its discretion. [Citation.]"

None of the cases on which Reaves relies supports her contention. *Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89 involved the failure to file a separate responsive statement of undisputed and disputed facts. The court held that "granting a motion for summary judgment based on a procedural error by the opposing party is equivalent to a sanction terminating the action in favor of the other party. Accordingly, the propriety of the court's order should be judged by the standards applicable to terminating sanctions." (*Id*. at p. 97.) In finding an abuse of discretion in

13

granting summary judgment on procedural grounds, the court noted that Code of Civil Procedure section 437c, subdivision (b), gives the trial court the discretion to grant the motion based on the absence of a responsive statement or continue the motion to permit the opposing party to file a responsive statement. (*Security Pacific Nat. Bank*, *supra*, at p. 94.) The court found "[n]otably absent from this action are the usual circumstances which support denial of a continuance: proximity to trial; prejudice to the other party; previous dilatory conduct; or, abuse of pretrial procedures." (*Id*. at p. 96.) No trial date had been set, and the opposing party did not claim prejudice. (*Ibid*.) Under these circumstances, the grant of summary judgment based on procedural error was an abuse of discretion.

Here, however, the trial court found proximity to trial, prejudice to the other party, and previous dilatory conduct. In addition, Reaves' late filing of her opposition was the result of a deliberate tactical choice. *Security Pacific Nat. Bank* affords no basis for relief. None of the other cases Reaves cites involved an untimely opposition to summary judgment under circumstances similar to those in the instant case. (See *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 [dissolution proceedings]; *Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 30-31 [trial court abused its discretion in refusing to consider opposition to summary judgment filed one day late in violation of local court rule where late filing did not interfere with court's ability "to fully consider the motion"]; *Parkview Villas Assn. Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1209-1210 [inadequate separate statement]; *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1161-1162 [failure to file a separate statement]; *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 335 [same].)

We conclude that, under the circumstances of this case, the trial court's refusal to consider Reaves' late-filed opposition need not be analyzed under the rules applicable to a terminating sanction. The good cause/abuse of discretion standard discussed above is appropriate to protect her rights as well as those of the County.

4. *Request for Independent Review of the Order Granting Summary Judgment*

Reaves also asserts that "[b]ecause the trial court's decision to grant the summary judgment was based solely on [her] failure to file a timely opposition, this court should independently review the order granting the motion." (Bold & capitalization omitted.) Reaves is mistaken.

First, the trial court's grant of summary judgment was not based solely on Reaves' failure to file a timely opposition. The court stated that it had reviewed the evidence submitted by the County. Based on that evidence, the court concluded the County met its burden of establishing there were no triable issues of material fact and it was entitled to judgment in its favor as a matter of law.

Second, we are "'not required to search the record on [our] own seeking error.' [Citation.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; accord, *People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 502-503.) "'Instead of a fair and sincere effort to show that the trial court was wrong,'" Reaves' assertion "'is a mere challenge to [the County and to this court] to prove that the court was right. . . . An appellant is not permitted to evade or shift his [or her] responsibility in this manner.' [Citation.]" (*Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 505.) We decline Reaves' invitation to search the record for error.

## C. *Demurrer Sustained and Dismissal as to Individual Defendants*

Reaves contends that the trial court erred in sustaining the individual defendants' demurrer to her conspiracy causes of action under the intra-corporate conspiracy doctrine, because the alleged actions of the individual defendants fell within the exceptions to the doctrine: the conspiracy involved a series of discriminatory acts, the individual defendants conspired with other persons not employed by the county, and the conspiracy fell outside the scope of the employees' job duties.

15

1. *Allegations of Reaves' First Amended Complaint*

In her causes of action for conspiracy to interfere with her civil rights in violation of sections 1983 and 1985(3), Reaves alleged "that Marina Rojas, her Director, conspired with her friend LaCarla Williams and their subordinate Andrea Washington (all employees of the County) to interfere with [Reaves'] protected property right in her continued employment by instigating people to file complaints against her and based on the complaints, suspended [Reaves] for 20 days in addition to giving her a negative performance evaluation, amidst others, all in an effort to set her up for termination."

In her first cause of action for race discrimination, Reaves, who is African-American, alleged that she was subject to "discriminatory acts . . . masterminded by Marina Rojas, a Hispanic, [which] were motivated partly on account of her race," as well as disparate treatment on account of her race. In her conspiracy causes of action, Reaves again stated that she was African-American, but she did not allege any race-based motivation.

2. *Intra-corporate Conspiracy Doctrine*

To state a cause of action for conspiracy to interfere with civil rights under section 1985(3), a "[p]laintiff must allege four elements: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' [Citation.] Additionally, [the p]laintiff must show 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' [Citation.]" (*Rabkin v. Dean*, *supra*, 856 F.Supp. at pp. 550-551; accord, *Denney v. City of Albany* (11th Cir. 2001) 247 F.3d 1172, 1190.)

A claim under section 1983 requires an allegation "that (1) [an] action occurred 'under color of state law' and (2) the action resulted in a deprivation of a constitutional

16

right . . . ."[5]  (*McDade v. West* (9th Cir. 2000) 223 F.3d 1135, 1139.)  "'[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'"  (*Id.* at p. 1140, quoting *West v. Atkins* (1988) 487 U.S. 42, 49-50.)  "The acts [complained of], therefore, must be performed while the [employee] is acting, purporting, or pretending to act in the performance of his or her official duties."  (*McDade*, *supra*, at p. 1140.)  A county employee acts under color of state law.  (*Id.* at p. 1141 [employee of District Attorney's office is a state actor].)

"'The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy.  Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.'  [Citation.]  The doctrine applies to public entities such as the [County] and its personnel.  [Citations.]"  (*Denney v. City of Albany*, *supra*, 247 F.3d at p. 1190; accord, *Rehberg v. Paulk*, *supra*, 611 F.3d at p. 854.)

The United States Court of Appeals for the Ninth Circuit has thus far declined to determine whether to apply the intra-corporate conspiracy doctrine to civil rights claims (*Portman v. County of Santa Clara* (9th Cir. 1993) 995 F.2d 898, 910; see *Donahoe v. Arpaio* (D.Ariz. 2012) 869 F.Supp.2d 1020, 1074),[6] as has the United States Supreme

---

[5]      As recognized by defendants' counsel during oral argument, a section 1983 claim, unlike a section 1985(3) claim, does not require a conspiracy.

[6]      As noted in *Schmitz v. Mars, Inc.* (D.Or. 2003) 261 F.Supp.2d 1226, 1234-1235, "[t]he Circuit Courts are divided over whether the intracorporate conspiracy doctrine applies to claims brought under [section] 1985.  [(]*See Portman v. County of Santa Clara*[, *supra*], 995 F.2d [at p.] 910 . . . (summarizing cases).[)]  The Second, Fourth, Sixth, Seventh, and Eighth Circuits have extended the doctrine to [section] 1985 claims. [(]*Hoefer* [*v. Fluor Daniel, Inc.* (C.D.Cal. 2000)] 92 F.Supp.2d [1055,] 1057.[)]  The First and Third Circuits, however, have refused to apply the intracorporate conspiracy doctrine to [section] 1985 cases alleging conspiracies to discriminate on the basis of race or sex.  [(*Hoefer*, *supra*,] at [p.] 1058.[)]  [¶]  The Ninth Circuit, however, has not yet decided the issue.  [(]*Portman*, [*supra*,] 995 F.2d at [p.] 910.[)]"  Section 1983 actions are

Court (see *Rebel Van Lines v. City of Compton* (C.D.Cal. 1987) 663 F.Supp. 786, 791). Some lower federal courts within the Ninth Circuit have applied the doctrine (see, e.g., *Donohoe*, *supra*, at pp. 1074-1075; *Schmitz v. Mars, Inc.*, *supra*, 261 F.Supp.2d at pp. 1234-1235; *Hoefer v. Fluor Daniel, Inc.*, *supra*, 92 F.Supp.2d at p. 1059; *Mory v. City of Chula Vista* (S.D.Cal. Feb. 11, 2008, No. 07CV0462) 2008 WL 360449 at p. 6), while others have not (see, e.g., *Washington v. Duty Free Shoppers* (N.D.Cal. 1988) 696 F.Supp. 1323, 1326; *Rebel Van Lines*, *supra*, at pp. 792-793; *Elowson v. Jea Senior Living* (E.D.Cal. May 22, 2015, No. 2:14-CV-02559-JAM-KJN) 2015 WL 2455695 at p. 4; *Ibarra v. City of Watsonville* (N.D.Cal. Feb. 15, 2013, No. 5:12-CV-02271-EJD) 2013 WL 623045 at p. 8).

We have found no California case holding the doctrine applicable to section 1983 or 1985(3) actions. However, "[i]t has long been the rule in California that '[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage.'" (*Black v. Bank of America* (1994) 30 Cal.App.4th 1, 4.) Under the agent's immunity rule, "when a corporate employee acts in his or her authorized capacity on behalf of his or her corporate employer, there can be no claim of conspiracy between the corporate employer and the corporate employee." (*People ex rel. Herrera v. Stender* (2012) 212 Cal.App.4th 614, 638-639.) However, agents may be liable for conspiracy "for conduct which the agents carry out 'as individuals for their individual advantage' and not solely on behalf of the principal. [Citation.]" (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 47; accord, *Black*, *supra*, at p. 6, fn. 3 [under facts of case, "[a]ppellants cannot rely upon the exception to the rule of agent's immunity allowing corporate employees to be held liable for conspiracy with their principal when they act for their own individual advantage and not solely on behalf of the corporation, or act beyond the scope of their authority"].)

---

also subject to the doctrine. (*Anemone v. Metro. Transp. Auth.* (S.D.N.Y. 2006) 419 F.Supp.2d 602, 604.)

Inasmuch as California law applies a doctrine similar to the intra-corporate conspiracy doctrine to general conspiracy claims, we see no reason why the doctrine should not be applied to claims brought under sections 1983 and 1985(3) as well. We therefore agree with those federal courts which hold that the intra-corporate conspiracy doctrine applies to sections 1983 and 1985(3) claims.

   3. *Exceptions to the Intra-corporate Conspiracy Doctrine*

   As with the agent's immunity rule, "'an exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity.' [Citations.]" (*Quinn v. Nassau County Police Dept.* (E.D.N.Y. 1999) 53 F.Supp.2d 347, 360.) Stated otherwise, the intra-corporate conspiracy "doctrine would not apply if the actionable conduct is outside the scope of employment." (*Hoefer v. Fluor Daniel, Inc.*, *supra*, 92 F.Supp.2d at p. 1059; accord, *Johnson v. Hills & Dales General Hosp.* (6th Cir. 1994) 40 F.3d 837, 841.)

   Conduct within the scope of employment would include "'commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. . . .' [Citation.]" (*Reno v. Baird* (1998) 18 Cal.4th 640, 646-647 [distinguishing between harassment and discrimination for purposes of FEHA].)

   Conduct outside the scope of employment "'consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.'" (*Reno v. Baird*, *supra*, 18 Cal.4th at p. 646.) It might include using slurs or derogatory drawings, physically interfering with freedom of movement, engaging in unwanted sexual advances, and

similar conduct, which is unnecessary "to carry out the legitimate objectives" of the employer. (*Reno*, *supra*, at p. 646.)

Based on the foregoing, to the extent Reaves' conspiracy causes of action are based on her suspension, negative performance evaluations, or other personnel actions, the individual defendants are protected from liability by the intra-corporate conspiracy doctrine. We do not believe, however, that instigating people to file complaints against Reaves would fall within the doctrine. These are not the types of action which are "'necessary to carry out the duties of business and personnel management.'" (*Reno v. Baird*, *supra*, 18 Cal.4th at p. 647.)

Reaves also relies on a purported "series of discriminatory acts" exception. The exception set forth in *Rackin v. University of Pennsylvania* (E.D.Pa. 1974) 386 F.Supp. 992 does not appear to have widespread acceptance.[7] *Rackin* found that the intra-corporate conspiracy doctrine did not apply when there were multiple instances of discriminatory conduct or harassment. Based on the facts of *Rackin*, we question whether this is, indeed, a discrete exception to the doctrine, as opposed to a variation of the exception applicable to conduct outside the scope of employment.[8]

The court in *Coley v. M & M Mars, Inc.* (M.D.Ga. 1978) 461 F.Supp. 1073 rejected the multiple discriminatory acts exception to the doctrine based on the "general rule . . . that a single entity cannot conspire with itself" no matter the number of acts involved. (*Id.* at p. 1076.) Instead, *Coley* determined alleged multiple acts of discrimination and harassment "express the likelihood that the[] employees were

---

[7]     The Eleventh Circuit has mentioned this exception but has not yet reached the issue of whether to adopt it. (*Grider v. City of Auburn, Ala.* (11th Cir. 2010) 618 F.3d 1240, 1263; see *Dickerson v. Alachua County Com'n* (11th Cir. 2000) 200 F.3d 761, 770.)

[8]     The defendants in *Rackin* argued that a conspiracy could not exist when there was only one act, a termination of employment, in issue. The court noted that the plaintiff had alleged many instances of discrimination by the alleged conspirators, and therefore, the doctrine did not apply. (*Rackin v. University of Pennsylvania*, *supra*, 386 F.Supp. at pp. 1005-1006.)

20

motivated by a personal racial bias and were not acting out of concern for the best interests of their employer." (*Ibid.*)

We agree that the number of acts should not be determinative as to whether the intra-corporate conspiracy doctrine applies. If "'there can be no claim of conspiracy between the corporate employer and the corporate employee'" (*People ex rel. Herrera v. Stender*, *supra*, 212 Cal.App.4th at pp. 638-639), then the number of acts undertaken in furtherance of the conspiracy should be irrelevant. Rather, the question should be whether the acts fall within the exception to the doctrine applicable when employees "act for their own individual advantage and not solely on behalf of the corporation, or act beyond the scope of their authority." (*Black v. Bank of America*, *supra*, 30 Cal.App.4th at p. 6, fn. 3; accord, *Coley v. M & M Mars, Inc.*, *supra*, 461 F.Supp. at p. 1077.) Thus, we conclude there is no "series of discriminatory acts" exception to the intra-corporate conspiracy doctrine on which Reaves need rely.

On demurrer, "'if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend.'" (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1057.) Because it appears that Reaves may be able to state a cause of action against the individual defendants based on her allegations of racial discrimination and that others were being recruited to lodge complaints about her, the trial court abused its discretion in sustaining their demurrer to the first amended complaint without leave to amend and dismissing them from the action.[9]

---

[9] In light of this conclusion, we need not address the third exception to the intra-corporate conspiracy doctrine cited by Reaves, conspiracy with outsiders. (*Rehberg v. Paulk*, *supra*, 611 F.3d at p. 854; *Denney v. City of Albany*, *supra*, 247 F.3d at pp. 1190-1191.) In any event, Reaves did not allege that the outsiders were part of the conspiracy; she alleged that the conspirators instigated the outsiders to file complaints which the conspirators then used to further their conspiracy.

## DISPOSITION

The judgment is affirmed as to the County and reversed as to Rojas, Washington, and Williams. The trial court is directed to vacate the dismissal of Rojas, Washington, and Williams from the action and the January 10, 2013 order sustaining their demurrer without leave to amend as to the conspiracy causes of action. The trial court is directed to enter a new order granting Reaves leave to amend her complaint to state conspiracy causes of action against Rojas, Washington, and Williams in a manner consistent with this opinion. The parties are to bear their own costs on appeal.

BECKLOFF, J.[*]

We concur:


PERLUSS, P. J.


ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.